```
 1              IN THE UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2                            MIAMI
                   CASE NO. 17-CR-10009-JLK-4
 3   _____

 4    UNITED STATES OF AMERICA,
                            Plaintiff
 5              vs.                        October 18, 2017

 6    ONEIL ANTHONY HARRIS,
                            Defendant.
 7
     _____
 8                    SENTENCING HEARING

 9         BEFORE THE HONORABLE JAMES LAWRENCE KING,

10          UNITED STATES DISTRICT COURT JUDGE
     _____
11
                       A P P E A R A N C E S
12
     FOR THE PLAINTIFF:    JESSICA K. OBENAUF, AUSA
13   UNITED STATES OF      United States Attorney's Office
     AMERICA               99 NE 4th Street
14                         Miami, FL 33132
                           (305) 961-9317
15                         Jessica.obenauf@usdoj.gov

16   FOR THE DEFENDANT:    STEWART G. ABRAMS, AFPD
     ONEIL ANTHONY HARRIS  Federal Public Defender's Office
17                         150 W. Flagler Street
                           Miami, FL 33130
18                         (305) 536-6900
                           Stewart_abrams@fd.org
19


20   REPORTED BY:          GIZELLA BAAN-PROULX, RPR, FCRR
21                         United States Court Reporter
                           400 North Miami Avenue, Suite 8S32
22                         Miami  FL  33128
                           (305) 523-5294
23                         gizella_baan-proulx@flsd.uscourts.gov

24   Also present:
             Special Agent Kelly Jacobs
25
```

<u>P R O C E E D I N G S</u>

*(The following proceedings were held in open court.)*

**THE COURT:**  Please be seated.  All right.  We scheduled the sentencing hearing many months ago in the case of United States versus Richard Karl Mork and Oneil Anthony Harris.

The Court has spent the usual time for preparation of these matters if they're done carefully, and it spent considerable time on analyzing the pleadings, the presentence investigation report, which in the case of Mr. Mork was initially given to the parties on July 25th.  That's two and a half months ago.

First, let me get the appearances.  Who is here for the government, please?

**MS. OBERNAUF:**  Good morning, Your Honor.  Jessica Obernauf for the United States.  Also present at counsel table is Special Agent Kelly Jacobs from Homeland Security Investigations.

**THE COURT:**  Mr. Mork is scheduled first, so we have Douglas Molloy?

**MR. MOLLOY:**  Yes, Judge.  Douglas Molloy for Richard Mork, seated to my left.  Good morning.

**THE COURT:**  Good morning.  Coming back to the problem that is presented by the government's ignoring this case with it in terms of filing anything, any response to the defense

1    objection until 9:58 this morning the 18th.

2            The preparation that I had made in the last two hours

3    this morning of carefully reading through the objections of the

4    defense and analyzing the case with no response from the

11:06  5    government impelled to, in constructing the comments that I

6    would make about what was pending, which I wrote out and my

7    secretary dictated, and we finished it up about 20 minutes ago,

8    as far as the background, what I would have said to you was an

9    outline of the objections and the analysis of paragraphs 33,

11:07  10   35, 56, and so on, would have been to state that I have read

11   and reviewed those things as is customary, I tell the parties

12   what I've done.

13           And in here I would simply have said the government

14   has not responded to these objections and -- but we will go

11:08  15   ahead and hear from everybody, but I prepared all this with the

16   view in mind I had heard nothing from the government.

17           Now the government comes in willy nilly, 9:58, about

18   an hour ago, and files in the clerk's office.  Not even a

19   courtesy copy:  I know it's late, but here it is, because then

11:08  20   I could read that and understand the government's viewpoint.

21           Now, obviously, I'm experienced enough and here long

22   enough that I can anticipate somewhat the government was

23   probably going to say.  I certainly know the law regarding

24   whether or not a person is -- has -- whether there are points

11:08  25   added to someone who may or may not be -- have the sufficient

1  skill to operate -- I know the law on this.

2          But this is just, just beyond repair.  I just have to

3  say that this is not the proper conduct to drop this in.

4          Now, Ms. Obernauf, that may have been dumped on you

11:09   5  last night at midnight and you didn't whatever, but the U.S. --

6  the probation office finished their initial report on July

7  25th.  Am I correct?  State your name for the record,

8  probation?

9          **PROBATION:**  Good morning, Your Honor.  Sherika

11:09  10  Prospere with the U.S. Probation.  The report was disclosed on

11  July 25th.

12          **THE COURT:**  So the government has known this issue

13  about these objections.  You've known the objections.  Not

14  since then, but you have had that long to get ready.  So -- and

11:09  15  you now say you have a couple of witnesses.  Fine.  The defense

16  may have witnesses.  Fine.

17          But the issues now just got added to or crystallized,

18  at least as far as the government's position, an hour ago.  So

19  I'm going to bypass this one and give the -- I know that the

11:10  20  defense lawyer or some of them are here from Naples and have

21  come in.

22          So what I'm going to do, I suppose -- well, what's --

23  I mean, Ms. Obernauf, what can the government say to me about

24  why, after I've spent this morning two hours and yesterday two

11:10  25  hours reading, studying, reading your cases, preparing for

1   this -- which is my job.  I don't mind that.  I'm supposed to

2   do that.  But what a waste of time to even prepare out written

3   tentative ideas to myself about the analysis of these cases and

4   so on.

11:10  5          And where I would just start out, I've received

6   nothing from the government.  Now, that's the way on each one

7   of these.  Now that's changed because an hour ago you come up

8   and file something.  And you have a point.  And you have

9   arguments.  And you would make your oral arguments, but is

11:11 10   there any reason there was a need to wait until this morning to

11   file an answer to the objections?

12          Am I mistaken that maybe it was filed a month ago and

13   I just didn't find it?  If so, I apologize.  But look, I mean,

14   you know, literally, I've spent about three hours.  I'm not

11:11 15   complaining about the time.  An hour yesterday and two hours

16   this morning.  Got in early.  Read through it again.  All

17   right.

18          Now, why is the government -- and it's happening more

19   and more.  Why?  Why do you wait to the last minute?  Why did

11:11 20   you wait today until the last minute?  Why did you wait today

21   until the last minute.  Stand up and tell me.

22          **MS. OBERNAUF:**  Yes, Your Honor.

23          **THE COURT:**  Use the microphone.

24          **MS. OBERNAUF:**  Sure.  The government's understanding

11:12 25   is that the defendant has objected to facts contained within

the presentence investigation report.  And at the time the

government received the objections, the government began to

prepare to present evidence, which is what is required at a

sentencing hearing in order to substantiate the enhancements.

11:12  In all candor --

**THE COURT**:  Including a written report in advance so

the Court can read it.

Now, the government's motion -- that's -- this is a --

when was -- let's see.  Mr. Molloy filed his objections to the

11:12  PSI October 2nd.  October 2nd.  Today is the 18th.

So you've had 16 days to file a response which should

have been due in time for the Court to consider it, and it does

change.  It does make changes in the approach to this argument,

that is, my understanding of what the issues are and your

11:13  positions.  And I had to guess about yours.

I mean, and he was charged -- I mean, you knew he had

allegedly two minors aboard, which is very serious stuff.  All

right.  So you went to work, and you just got the information

from Boston or Massachusetts yesterday.  Is that what you're

11:13  saying?

**MS. OBERNAUF**:  Yes, Your Honor.

**THE COURT**:  All right.  All right.  Well, let's

continue the hearing.  We'll continue it.  I'm not going to

bring these people back, the witnesses here.  So we will put

11:13  you -- and we will take the Harris case next -- first, and then

1    you all will have a seat out there.  That will give Mr. Molloy

2    at least a chance to read it.

3            Mr. Molloy, do you have any comment?  I don't know.

4    Maybe you don't need any time to read it.  I don't know.  What

11:13  5    is your position?

6            **MR. MOLLOY:**  Judge, as you pointed out, we received

7    this information.  I was in the Federal Detention Center

8    yesterday afternoon working with Mr. Mork in preparation for

9    this hearing.  I got it around 6:30.  We exchanged e-mails

11:14 10    about it.

11            I did express my concern about this late date, and my

12    concern with actually the nature of the evidence itself.

13            I would inform the Court that even though they will

14    not be speaking, the defendant's brother who came in from

11:14 15    Colorado, the defendant's mother, who came in from Wisconsin,

16    and the defendant's sister who came in from Naples, are here to

17    show family support and it kind of puts us in a box.

18            I've got people who have flown in for this hearing,

19    and it just makes it very difficult -- excuse me -- makes it

11:14 20    very difficult when the information is given to me -- I

21    received it after hours last night.  So I'm in a very difficult

22    position, Judge.

23            **THE COURT:**  Of course you are.  We all are because the

24    government waited until the last minute to state their

11:15 25    position, and they just -- there we are.

1        So I'm not going to put the defendant in that

2   difficult position from last night until this morning at 11:00

3   o'clock.  You had precious little time to check anything out

4   that was asserted as a fact.  I don't how you -- it refers to

11:15  5   matters that would indicate that it is apparently some sort of

6   fact -- or at least the government is going to attempt to prove

7   that it is a fact that the minor child, whatever minor, is now

8   located somewhere in Massachusetts in state custody indicating,

9   I presume -- or their argument being that he was not

11:16 10   accompanied by a guardian or parent.  No way you have of

11   checking that.  I understand that.

12        I don't want these people who traveled here from

13   Colorado and elsewhere, the witnesses for the defense, to have

14   to come back for that.  That's -- it's ridiculous.  Now beyond

11:16 15   being ridiculous, it's callous and -- well, all right.

16        And the government has furnished now two witnesses,

17   and that would have been nice for the Court to know ahead of

18   time in scheduling this hearing.  If you're going to have

19   witnesses, either side, courtesy is routine in the Southern

11:16 20   District of Florida for assistant U.S. attorneys and federal

21   public defenders and court-appointed to notify the courtroom

22   deputy.

23        This case is going to have several witnesses.  It may

24   take several hours, just so that we can schedule our time.  Now

11:17 25   if I continue this over to give you a day or two or three to

1  try to investigate this, you're not -- I don't -- in listening

2  to you, I don't hear you saying that, and you may not need

3  that, and that may not be necessary.

4          If you think however you would like to have time to

11:17  5  talk to your client and his family and do the normal things

6  that good lawyers do professionally to get ready for a hearing,

7  if it would help you to do this after lunch, it's only a couple

8  of hours away, I can do that.  That's minimum that I would

9  think courtesy you would be entitled to.  If that conflicts

11:17 10  with the government's that's too bad.  But -- because you've

11  got witnesses here.  If you didn't, I would simply give you a

12  week to do it or whatever you wanted to do.

13          Do you believe you can -- and in deference to the

14  people who traveled here, would you prefer to have this this

11:18 15  afternoon or tomorrow morning or whatever but --

16          **MR. MOLLOY:**  I understand that you had one case to go.

17          **THE COURT:**  I've got the other defendant.  I'll go

18  ahead with that one.  We've got some lawyers on that one.

19  We'll go ahead with.

11:18 20          **MR. MOLLOY:**  What I'd like to do is have the

21  opportunity to talk to the family and to Mr. Mork, who I was

22  not able to communicate with obviously.

23          Just the opportunity to talk with the family and also,

24  more importantly, with Mr. Mork who I have not been able to

11:18 25  communicate with about this new information.  We may be ready

1    to go forward today, Judge, but I would like that opportunity.

2          THE COURT:  All right.  Confer with your client.  Make

3    your professional judgment.  And of course, considering his

4    position and advise my courtroom deputy just -- well, if you

11:19  5    just step in the back.

6          MR. MOLLOY:  That's what I'd like to do.

7          THE COURT:  There's a conference room on this floor.

8    And then Joyce, just keep your eye out for them.  And if

9    Mr. Molloy steps back in, then you go meet with him.

11:19 10    Mr. Obernauf, I don't know what she's going to do.  She's, I

11    presume, on the next case also, and I'm going ahead with that

12    one.  And the options would be to continue it until 1:00 or

13    1:30 or something today or any time you wanted.

14          MR. MOLLOY:  Yes, sir.

11:19 15          THE COURT:  In the next week, ten days, if you need

16    time to contact a colleague in Massachusetts, whatever you need

17    to do.  We're not going to penalize the defendant by the

18    government's negligence in waiting this long to bring these

19    things to us to our attention and files.  All right.

11:20 20          MR. MOLLOY:  Thank you, Judge.

21          THE COURT:  Joyce, you will advise Ms. Obernauf what

22    the decision is.  If we will be doing this at 2:00 o'clock

23    today or some day later.  Thank you.

24          MR. MOLLOY:  Thank you, Judge.

11:20 25          THE COURT:  If you step down, we'll have the lawyers

1    step forward in the case of USA versus Harris.

2           Marshal, can you make sure that the conference room is

3    open so they can use it in there, please?

4           **THE COURT SECURITY OFFICER:**  (Complies)

11:20    5    **THE COURT:**  Counsel, you need to talk to your client.

6    Can -- Marshal, is there someplace he can talk to his client

7    back there somewhere in the back of the room or somewhere back

8    there?

9           **MR. MOLLOY:**  Thank you, Judge.

11:21   10    **THE COURT:**  If the marshal's can to arrange it, fine.

11   If not, wherever the marshals have to do it.  Can you take care

12   of it, Marshal?

13          **THE DEPUTY MARSHALL:**  (Complies)

14          **THE COURT:**  All right.  I see Mr. Abrams setting up on

11:21   15   the floor in the Harris case.

16          **MR. ABRAMS:**  Good morning.

17          **MS. OBERNAUF:**  Good morning, Your Honor.  Jessica

18   Obernauf on behalf of the United States.

19          **THE COURT:**  All right.  Now, everybody have a seat.

11:21   20   Joyce, this is all the Mork materials that I was working on

21   this morning.  Hold that and now where is the -- do I have --

22   yes, I have it here, the Harris PSI.  Thank you.

23          All right.  Following the suggested procedural format

24   from the administrative office of the U.S. Courts and the 11th

11:23   25   Circuit and the Sentencing Guideline Commission, I will

announce to you that this matter is pending with reference to

Mr. Oneil Anthony Harris on this case where he is charged in

count 14 with alleged reentry after deportation for an

aggravated felony under 8 USC, Section 1326 A and B.

11:23    The general background from the pleadings you have

filed and from the presentence investigation report, all of

which I have read and reviewed, the government has a motion for

upward variance filed October 2nd and responded to by the

defendant, Mr. Abrams, on October 4th.  The government's

11:24   response to the motion was by Ms. Obernauf, counsel who is

present here today.  Other than that, those are the documents

that I've reviewed and read in preparation for this hearing.

        I inquire of both counsel, first the government, then

the defense, are there any other documents that should have

11:25   been filed prior to today or that you want me to bring up and

consider today?

        Are there any other documents or letters to the Court

that either of you have today?  Ms. Obernauf?

        **MS. OBERNAUF:**  No, Your Honor.

11:25   **THE COURT:**  Mr. Abrams?

        **MR. ABRAMS:**  Docket entry 98, which was filed on

October the 5th has two letters which we submitted to Your

Honor, one submitted by Mr. Harris' wife, and the other by an

individual named Careen (ph.) Patterson.

11:25   **THE COURT:**  I have not received those.  This indicates

1   the wisdom of a procedure that the sentencing guidelines has

2   suggested we follow to make this inquiry.  And the letters, of

3   course, submitted at this time are perfectly acceptable because

4   presuming you have given copies to the government.  Have you?

11:26  5          MR. ABRAMS:  They were filed, Judge.  This was

6   specifically filed -- the letters were filed on --

7          THE COURT:  When?  Yesterday?

8          MR. ABRAMS:  **No, sir.  October the 5th.**

9          THE COURT:  October the 5th.  And we're now at October

11:26 10  the 18th.  Excuse me.  Marshal, will you kindly bring the

11  letters, and I will read them now that for some reason did not

12  get into the file.  I don't know.

13          THE COURT SECURITY OFFICER:  (Complies)

14          THE COURT:  All right.  All right.  Let the record

11:28 15  reflect that we have taken -- I have taken the time and read

16  the letter from Mrs. Racquel Harris and a friend of hers, a

17  friend of the wife's apparently or references to a friend from

18  a Mrs. Careen Patterson.  I read both letters.  I will instruct

19  the clerk after the hearing to mark these two in evidence for

11:28 20  this hearing.  I'm going to keep them here for reference at

21  this point.  All right.

22          Other than that, for the defense, are there any other

23  documents, letters, anything you wish to submit?

24          MR. ABRAMS:  No, sir.

11:29 25          THE COURT:  All right.  Now, then, I ask the

1 prosecutor, do you have any witnesses or victims present in the

2 courtroom that you wish to call?

3          MS. OBERNAUF:  Yes, Your Honor.  The government has

4 one witness.  If the Court would like to receive a quick

11:29    5 proffer.  I'm not sure that the Court needs to hear --

6          THE COURT:  Call your witness and be sworn.

7          MS. OBERNAUF:  The United States calls Customs and

8 Borer Protection officer Narciso Fernandez.

9 Thereupon,

11:29   10                    NARCISO FERNANDEZ,

11 having been duly sworn by the courtroom deputy, testified as

12 follows:

13          THE WITNESS:  Yes, ma'am.

14          THE COURTROOM DEPUTY:  You may be seated.  Will you

11:29   15 please state your full name and spell your last name for the

16 record?

17 A.   Narciso Fernandez.

18          THE COURTROOM DEPUTY:  Thank you.  N-A-R-C-I-S-O,

19 F-E-R-N-A-N-D-E-Z.

11:30   20          MS. OBERNAUF:  My I inquire.

21          THE COURT:  Yes.

22

23                    *DIRECT EXAMINATION*

24 BY MS. OBERNAUF:

11:30   25 Q.   Good morning.

```
        1   A.    Good morning.

        2   Q.    Officer, where do you work?

        3   A.    I work with Customs and Border Protection here in the

        4   Southern District of Florida.

11:30   5   Q.    And Customs and Border Protection is also referred to as

        6   CBP?

        7   A.    Yes, ma'am.

        8   Q.    What do you do for CBP?

        9   A.    I'm an enforcement officer with CBP.  I investigate

11:30  10   individuals that are suspected of criminal violations.

       11   Q.    And briefly describe for the Court your background as an

       12   enforcement officer for CBP or any other immigration-related

       13   agencies?

       14   A.    Yes.  I've been 20 years collectively with Immigration and

11:31  15   Naturalization Service, which is now Customs and Border

       16   Protection.

       17          My prior experience was in detention and deportation

       18   of INS and also in the inspections division as an inspector for

       19   CBP and INS.  And then I became a criminal enforcement officer

11:31  20   for CBP.

       21   Q.    Are you familiar with the process of expedited removal of

       22   illegal aliens?

       23   A.    Yes.

       24   Q.    And have you had a chance to review documents from the

11:31  25   immigration file of the defendant, Oneil Anthony Harris, also
```

                1  known as Wayne Brown?

                2  A.   **Yes.**

                3  Q.   Briefly describe Mr. Harris' immigration history.

                4  A.   **Mr. Harris, in regards to his immigration history, I'm**

11:32           5  **going to mention the criminal arrests he's had because it**

                6  **affects his status in his immigration history.  So he was**

                7  **arrested on September 1, 2002, for intent to deliver cannabis,**

                8  **4 or 5000 grams.**

                9          **And then on December 11th, 2012, he was interdicted**

11:32          10  **and processed by Border Patrol in Dania Beach, Florida, as I**

               11  **started removal.**

               12  Q.   Let me stop you there.  What do you mean when you say he

               13  was interdicted?  What was he trying to do when he came upon

               14  Border Patrol?

11:32          15  A.   **He was illegally in the country or attempting illegal**

               16  **re-entry into the country.**

               17  Q.   So what did Border Patrol do when they found Mr. Harris

               18  trying to illegally re-enter the country?

               19  A.   **They processed him as an expedited removal.**

11:33          20  Q.   And what is an expedited removal?

               21  A.   **It's a process -- it's immigration proceeding that they use**

               22  **in lieu of an immigration judge, and they charge the person**

               23  **that is not -- in his case did not have documents to come in**

               24  **and was entering illegally.  And they place the person for what**

11:33          25  **they call expedited removal, which is the fastest turnaround**

1    that is possible out of the country.

2    Q.   Border Patrol then doesn't have to put the person before a

3    judge in deportation proceedings?  You can just do an expedited

4    removal process?

11:33  5    A.   Yes.

6    Q.   And you mentioned that he didn't have documents to be here

7    legally.  What was another reason cited as a basis for the

8    expedited removal?

9    A.   Also because of his criminal arrests and the trafficking

11:34 10   arrest basically is a charge, so that's another impediment to

11   keeping him from entering legally.

12   Q.   So in the documents relating to Mr. Harris' expedited

13   removal, was the arrest for the drug trafficking cited as a

14   reason, that being, that he was charged with an aggravated

11:34 15   felony?

16   A.   Yes.

17   Q.   In fact, on the documents, they put that he had been

18   convicted of an aggravated felony?

19   A.   Yes.

11:34 20   Q.   But at the point in time when they ordered him removed, had

21   he actually been convicted yet?

22   A.   When he was ordered removed at the border, at that point,

23   no, but they did foresee that he had a criminal violation.

24        Now, upon -- once he was convicted, upon his release

11:34 25   from state custody and upon the execution of the expedited

**removal, basically taking him out of the country, they**

**acknowledged the person, the deportation officer, that he was**

**an aggravated felon.**

Q.   So before moving on, let's go back to his arrest.  He's

arrested in the United States in 2002; is that right?

A.   **Yes.**

Q.   And in what state?

A.   **Chicago.  Chicago, Illinois.**

Q.   So he was present at that time in the United States, right?

A.   **Yes.**

Q.   And so in 2012, he was trying to re-enter the United

States?

A.   **Yes.**

Q.   So he must have left at some point in time, correct?

A.   **Yes.**

Q.   What did the border patrol agents do once they gave

Mr. Harris an order of removal at the border?

A.   **They went ahead and honored the Illinois warrant, so it**

**could -- justice could be served and the process could be**

**played out, and he was extradited to Illinois.**

Q.   And what happened in Illinois?

A.   **He was convicted for the intent to deliver cannabis.**

Q.   And that's an aggravated felony?

A.   **Yes.**

Q.   And what happened -- what sentence did he receive in

```
     1  Illinois for that offense?
     2  A.  He was sentenced to eight years.
     3  Q.  And did he serve his term of imprisonment in the United
     4  States?
11:36 5         THE COURT:  Excuse me.  Date that he was convicted?
     6  You said he was convicted in Illinois.
     7  A.  Yes, sir.
     8         THE COURT:  And the approximate date?
     9  A.  The approximate date of the conviction was June 13th, 2013.
11:36 10        THE COURT:  Thank you.  Ms. Obernauf?
    11         MS. OBERNAUF:  Thank you.
    12  BY MS. OBERNAUF:
    13  Q.  And you said he received an 8-year imprisonment sentence?
    14  A.  Yes.
11:36 15 Q.  And did he serve some portion of that sentence?
    16  A.  A portion, yes.
    17  Q.  And what happened after he completed his imprisonment?
    18  A.  He went back into Immigration Customs Enforcement custody
    19  on July 18th, 2016, after serving that sentence.  He was taken
11:37 20 into custody.
    21  Q.  For what purpose?
    22  A.  To finish out the expedited removal because of his
    23  immigration status.
    24  Q.  Was he ultimately physical removed from the United States?
11:37 25 A.  Yes.
```

1  Q.  And when was that?

2  A.  **He was removed on September 24th, 2016, from the United**

3  **States by deportation officers.**

4  Q.  And was that as an aggravated felon?

11:37  5  A.  **Yes.**

6  Q.  When was immigration's next encounter with Mr. Harris that

7  you have record of?

8  A.  **His next encounter was through the Border Patrol.  He was**

9  **also being interdicted near Tavarnier Key, Florida, on**

11:37 10  **March 12, 2017.**

11  Q.  And that was his arrest in this case, right?

12  A.  **Yes, his administrative immigration arrest.**

13  Q.  You mentioned that he was sentenced to eight years' prison

14  for the drug trafficking conviction.  Was he also sentenced to

11:38 15  a subsequent term of supervised release?

16  A.  **Yes.**

17  Q.  And for how long was that?

18  A.  **Three years.**

19        MS. OBERNAUF:  Thank you.  No further questions.

11:38 20        THE COURT:  Cross-examination?

21        MR. ABRAMS:  Yes, sir.  Judge, this will be extremely

22  limited because everything that we just heard is contained in

23  the presentence investigation report, and we don't contest any

24  of the facts.

11:38 25        THE COURT:  You have no questions?

1        MR. ABRAMS:  I'll just have two, which go to the

2   variance request.

3        THE COURT:  Well, just ask your questions.  The fact

4   that the prosecution called a witness is good practice --

11:38  5        MR. ABRAMS:  Yes, sir.

6        THE COURT:  -- good procedural practice is what I'm

7   saying.  We'll hear the witnesses testify, and this is good, so

8   I'm not -- and I agree with you; it may be a little

9   repetitious, but that's all right.  That's good.  I'd like to

11:39  10  see more of that.  Go ahead.  Ask your two questions, whatever

11  you have on cross.

12        MR. ABRAMS:  Thank you.

13

14                    *CROSS EXAMINATION*

11:39  15  BY MR. ABRAMS:

16  Q.  Good morning, sir.

17  A.  **Good morning.**

18  Q.  What is the date in which the Immigration and Customs

19  Service -- or whatever it is now referred to -- ordered

11:39  20  Mr. Harris' deportation from the United States before he went

21  to Illinois?

22  A.  **The date of the expedited removal, when it was ordered?**

23  Q.  Uh-huh.  (Nodding)

24  A.  **It was ordered -- it was served upon him, meaning**

11:39  25  **Mr. Harris, on December 12th, 2012, between December 11th,**

1  **2012.**

2  Q.   And that is --

3  A.   **And the 12th, yes.**

4  Q.   And that is the order which directs his removal from the

11:39  5  United States; is that right?

6  A.   **Yes.**

7  Q.   All right.  And but for there being a pending case in

8  Chicago or in Illinois warrants, he would have been deported

9  physically on that date; is that right?

11:40  10  A.   **Say that again, please?**

11  Q.   There was a pending warrant out of Illinois?

12  A.   **Criminal warrant, yes, for the state charge.**

13  Q.   And if there had not been a criminal warrant for a state

14  charge in Illinois, he would have been deported from the United

11:40  15  States as of or close to December 11 or December 12th, 2012; is

16  that right?

17  A.   **If there was no warrant to be honored and there was no**

18  **other impediment, then the expedited order of removal would**

19  **have been executed as soon as possible.**

11:40  20  Q.   And Mr. Harris was then sent to Illinois pursuant to the

21  state warrant, right?

22  A.   **Correct.**

23  Q.   And he was convicted of the state offense on or about June

24  the 13th, 2013; is that right?

11:40  25  A.   **Yes.**

1  Q.   And that is approximately six months after the expedited

2  order of removal was entered; is that right?  Give or take a

3  few days?

4  A.   **Give or take a few days.  Thank you.  Nothing further,**

11:41  5  **Judge.**

6          THE COURT:  Any questions by the government on

7  redirect?

8          MS. OBERNAUF:  No, Your Honor.

9          THE COURT:  You may step down.  Thank you, officer.

11:41  10  A.   **Thank you.**

11          THE COURT:  Do you have another witness?  I'm sorry.

12  Do you have any other witnesses?

13          MS. OBERNAUF:  No, Your Honor.

14          THE COURT:  All right.  Does defense have any

11:41  15  witnesses?

16          MR. ABRAMS:  No, sir.

17          THE COURT:  All right.  The evidence that I have

18  heard, obviously I believe it's fair to say, relate to the

19  government's motion for upward departure which was filed on

11:42  20  October 2nd, document number 92, and responded to on October

21  4th by the defense, document number 96.

22          So as a first step, we should -- the Court should

23  conclude and determine the advisory guideline range.  The

24  probation officer has -- pardon me.  May I have -- it's the

11:42  25  same officer.  Would you please announce your name again just

1  for this defendant?

2         **PROBATION**:  Good morning, Your Honor, Sherika Prospere

3  with U.S. probation.

4         **THE COURT**:  All right.  Thank you.  All right.

11:43  5  Probation Officer Prospere has calculated and recommended to

6  the government a guideline range -- well, first, an offense

7  level of 6 with a criminal history category of 3.

8         The probation office report reflects that there has

9  been no objection to the calculation by the defense or the

11:43  10  government to the basic calculation which will be or may be

11  affected by the Court's ruling on the motion for upward

12  departure, to which we have just heard evidence from Customs

13  Officer Fernandez.

14        So let me turn to this recommendation by the probation

11:44  15  office:  Offense level 6, criminal history category 3, to which

16  there's no objection and the Court, therefore, finds that that

17  is the correct guideline range which provides for an advisory

18  guideline provision of 2 to 8 months, followed by 1 to 5 years

19  probation, 3 to 5 years supervised release, a fine of up to

11:44  20  $9,500, and a special assessment of $100.  So that then the

21  Court has determined is the guideline range.

22        The motion for upward departure has been briefed by

23  both sides, by the government and the defense.  Rather than

24  delineating the issue, I will simply call upon counsel to

11:45  25  present whatever argument they may wish to present regarding

the government's motion for upward variance, and I'll call on
Ms. Obernauf for her statement.  Thank you for using the
podium.  That helps with the hearing.

     **MS. OBERNAUF:**  Just one moment.  Your Honor, the
defendant has been convicted under Title 18, United States
Code, Section 1326(b)2 which provides for an increased
statutory maximum from two years to 20 years based on the fact
that the defendant has been convicted of an aggravated felony.
That is not in dispute.

          The issue then arises in the calculation of the
guidelines because the Sentencing Commission, in an attempt to
account for the Congress' desire for an increased sentence, put
in various facts that could lead to an enhanced sentence.

          But the problem is that the guideline states that if
before the defendant was ordered deported or ordered removed,
he sustained a conviction for a certain type of felony, then
the Court can apply an enhancement.

          The problem with that is that is in conflict with the
statute itself, which does not require that the defendant have
been convicted of an aggravated felony prior to being ordered
removed but just that he has been convicted of an aggravated
felony prior to being removed.

          And the 11th Circuit has acknowledged that it's not
the date of the order, but it is the actual physical removal
from the United States which triggers the enhanced sentence

1    under the statute.

2          The 11th Circuit in United States versus Zeliah (ph.)

3    which is cited in the government's motion states that a clear

4    purpose of the statute that the defendant was convicted of is

11:48  5    to provide a greater deterrence to illegal reentry by a

6    deportee who has earlier committed a serious crime while in the

7    United States, and that given that purpose, a distinction

8    giving weight to the fortuities of dates of deportation orders

9    and convictions makes little sense.

11:48  10          So the 11th Circuit in Zeliah (ph.) stated that it's

11   the physical removal is what matters.  And so if the Court were

12   to give a guideline sentence in this case, the defendant would

13   not receive an increased sentence for the fact that he has been

14   convicted of an aggravated felony prior to being removed in the

11:49  15   first place.

16          Now, the defense will argue that he is receiving an

17   increased sentence because his criminal history category, it

18   has been increased to a level 3 because he was (one) on

19   supervised release when he committed the illegal reentry; and

11:49  20   (two) because he's received criminal history points for the

21   prior conviction.

22          But the government's response to that is those

23   enhancements deal with that specific wrong:  Committing a

24   crime, whether it be robbery, illegal reentry, or murder while

11:49  25   on some sort of supervision of the Court and then also

1   committing a crime while you have prior criminal convictions in

2   the past.

3          The government's request for an upper variance is

4   based on the fact that the defendant should be specifically

11:49   5   punished for the act of committing serious crime in the United

6   States, being removed, and then coming back, which is what he

7   did.

8          And the Court has heard from Officer Fernandez who

9   stated that the defendant was arrested in Illinois in 2002 for

11:50   10   drug trafficking and then at some point in time, while he's

11   pending charges, left the United States.  And then over ten

12   years later, attempts to re-enter the United States.

13          So the government is requesting an increased

14   sentence -- we're not arguing that the Court should apply the

11:50   15   enhancement, but I think that it is a good place to start that

16   if that 10-point enhancement were to apply, what guideline

17   range would the defendant be in.  And he would be in a

18   24-to-30-month imprisonment range.

19          The government is requesting a sentence of 30 months'

11:50   20   imprisonment.  Thank you.

21          THE COURT:  And it's referred to as a 10-level

22   enhancement in the -- yes.  I understand.

23          MS. OBERNAUF:  Okay.

24          THE COURT:  Thank you.

11:51   25          MS. OBERNAUF:  Thank you.

1          THE COURT:  All right.  Mr. Abrams, in response to the

2   government's motion for an upward departure from the guideline

3   range to a level that would bring it within the recommended

4   range of 24 to 30 months prior to any consideration of the

11:51   5   Title 18 -- where am I here -- 3553 --

6          MR. ABRAMS:  Yes, sir.

7          THE COURT:  -- 3553 motion.  This is a step in this

8   evolving sentencing process.

9          MR. ABRAMS:  Yes, Your Honor.

11:51  10          THE COURT:  Your response to the defense to the

11   government motion for an upward variance?

12          MR. ABRAMS:  Yes, sir.  Judge, it's interesting to

13   hear the government talking about things which we believe was a

14   matter of congressional oversight in regard to the manner in

11:52  15   which a statute or a provision of law is written, and the

16   response that defense attorneys hear all the time for matters

17   such as, well, why doesn't the safety valve apply to Title 46

18   cases, and it applies to Title 21 cases?  And the response that

19   we generally get with that is take it up with Congress because

11:52  20   they're the ones who passed the law.

21          And what is interesting about this -- first off, the

22   Zeliah (ph.) case, which was cited by counsel, we note is a

23   2002 case.  So it's 15 years old.  And that is well before the

24   guidelines which are applicable to this case were promulgated

11:52  25   and became -- not only were they passed by the Sentencing

1   Commission, but the Sentencing Commission doesn't have carte

2   blanche to do whatever they want.

3       The Sentencing Commission promulgates guidelines,

4   which, if Congress doesn't act, become law.  And if Congress

11:53  5   does act and Congress feels that the Sentencing Commission is

6   doing something which is contrary to congressional intent, they

7   have the option of changing it.

8       And what happened in regard to this case was had

9   Mr. Harris' case come before this Court one year ago and the

11:53  10   prior version of the sentencing guidelines was in effect, the

11   guidelines would be pretty much what Your Honor just heard and

12   what was suggested to, Your Honor.

13       However, and as is noted in our pleadings, the

14   Sentencing Commission changed Section 201.2.  And the main

11:53  15   difference between the prior version and the current version is

16   the old version talks about someone being physically removed

17   from the United States, versus the current version which is now

18   the law.

19       I mean, these are advisory guidelines, but these are

11:54  20   the guidelines that are before us now.  Instead of just saying

21   removed, the guidelines now say ordered removed.  And if an

22   individual was ordered removed after sustaining a conviction,

23   then the enhancement applies.

24       In Mr. Harris' case, Mr. Harris was ordered removed

11:54  25   before he was convicted.  And, therefore, based on the very

1   language of the guidelines, which was specifically changed in

2   the last year, Mr. Harris does not apply for this enhancement.

3          Now, with respect to matters involving departures,

4   involving sentences, well, the guidelines talk about

11:54   5   underrepresentation of criminal history.  And if there are

6   prior convictions which are not accounted for in the

7   guidelines, then the Court can, if it chooses in its discretion

8   to do so, consider prior convictions which otherwise are not

9   scoreable and which do not count.

11:55   10          In Mr. Harris' case, his prior Illinois conviction

11   does count.  Mr. Harris received three criminal history points

12   based on the sentence.  Mr. Harris received an additional two

13   criminal history points because he was on supervision when he

14   improperly came back into the United States.  And that gave him

11:55   15   a total of five criminal history points, which put him in a

16   criminal history category of 3 as opposed to a criminal history

17   category 1.

18          So the prior case, which happened 15 years ago, has

19   been taken into account in determining Mr. Harris' criminal

11:55   20   history.  The government doesn't like the fact that the math

21   doesn't work out in their favor.  And, you know what?  We deal

22   with that all the time.  And the remedy for that is to get the

23   law changed.  But the law, as it exists right now before this

24   Court, is -- and as is properly calculated in the sentencing

11:56   25   guidelines, in the guideline calculation, where this prior

1 conviction is taken into account and given the appropriate

2 points which are provided for by the present version of the

3 guideline, Mr. Harris' guidelines are appropriately calculated

4 at 2 to 8 months.

11:56   5        The prior conviction is taken into consideration and

6 scored properly according to the present version of the

7 guidelines.  Mr. Harris' present guidelines are 2 to 8 months.

8 He's been in custody for the past 7.  And we believe and, at

9 the appropriate time when we get to this, I will ask Your Honor

11:56  10 to consider sentencing Mr. Harris to time served.  He's a

11 Jamaican national who at the conclusion of his sentence is

12 going to be deported.

13        **THE COURT:**  He's been in custody -- please repeat

14 that?

11:57  15        **MR. ABRAMS:**  For the past 7 months, Judge.

16        **THE COURT:**  7 months.  And you are arguing for a

17 denial of the government's motion leaving it within a guideline

18 range of --

19        **MR. ABRAMS:**  2 to 8 months.

11:57  20        **THE COURT:**  -- 2 to 8 months.  Okay.  That's -- thank

21 you.

22        **MR. ABRAMS:**  Yes, sir.  Judge, I did bring the two

23 versions of the guidelines if Your Honor would like to hear the

24 difference between the two versions, the one from pre-2016 and

11:57  25 the one post-2016.

1          **THE COURT:**  I understand, I believe, the intent of

2    Congress in dealing with this issue, and I have followed your

3    argument regarding a technical application of the statute as it

4    now reads and as it formerly read.  I believe I've heard

11:57  5    everything, unless you have something further.

6          **MR. ABRAMS:**  No, sir.

7          **THE COURT:**  All right.  Ms. Obernauf, rebuttal?

8          **MS. OBERNAUF:**  Thank you, Your Honor.  The crux of my

9    motion is based on the factors in 18 USC 3553, when a statute

11:58  10    is in conflict with the sentencing guidelines, the statute

11    trumps.

12          And if the Court were to increase the defendant's

13    sentence, that would account for Congress' mandate that a

14    harsher punishment is warranted for an alien who reenters the

11:58  15    country after previously being removed subsequent to an

16    aggravated felony conviction.

17          And that would account for the Court's need to impose

18    a punishment in order to reflect the seriousness of the

19    offense, to promote respect for the law, to provide just

11:58  20    punishment, and to afford adequate deterrence.  Thank you.

21          **THE COURT:**  Thank you.  With respect to the

22    government's motion for upward variance as objected to by the

23    defendant and his counsel, the Court determines and rules that

24    the intent of the Congress is quite clear regarding reentry of

12:00  25    someone who has had a prior felony involvement.  The

circumstances of this case, as argued by the lawyers, are

pretty clear, very clear; that the factual recitation of the

time when the defendant skipped out on his state charge and the

timing of these various things evolved into or decided by, I

12:00   think, the reading of the law as suggested in your memoranda

and briefs by the government regarding the 11th Circuit

position on this matter and the instructions in that case which

Zeliah (ph.) case, I believe it is, which gives the Court

discretion to rule on this matter and carry out the intent of

12:01   Congress should the Court decide that that is appropriate.

The Court does decide that that is appropriate.  The

motion, therefore, of the government is granted.  And the Court

will exercise its discretion to vary upward from the guideline

calculation and sentence the defendant within the range as it

12:01   would have been if the 10-level enhancement had been applied,

which leaves then an advisory guideline range of 24 to 30

months.

Now we turn next to -- with the probation for

supervised release and fine and deportation and the other

12:02   elements, the major change being the guideline range.  And the

Court so instructs the probation office, if there's any need to

make any changes, to reflect this ruling, that you will do so,

whatever is appropriate or what might the courtroom deputy to

present the order to me.  This is the rule.

12:02   Now, let's see.  I believe there is -- well, we now

1    get to the process of consideration of the Title 18m United

2    States Code 3553(a) matters.  It seems to me -- and I may have

3    the cases mixed up.  Have you -- does the defense have any

4    motion regarding the Title 18 matters?

12:03  5          MR. ABRAMS:  Well, yes, sir.  We would still -- Your

6    Honor, based on some of the factors that are contained in the

7    presentence investigation report, and pursuant to 18 USC

8    Section 3553, recognizing Your Honor's ruling with respect to

9    the law and the situation pertaining to people coming back with

12:03 10   aggravated felony convictions, we would still ask under the

11   circumstances of this case with this one gentleman who is

12   before you to consider certain factors which we believe would

13   warrant a lesser sentence.

14          Mr. Harris has -- and what is driving this case is a

12:04 15   matter involving a controlled substance which occurred 15 years

16   ago.  Mr. Harris is a 44-year-old gentleman.  He has four

17   children.

18          The reason he came back to this country -- and his

19   wife Racquel is in the courtroom today -- is because his wife

12:04 20   was here.  She lives in Ohio with their 13-year-old and their

21   12-year-old children, and that is the whole reason that he came

22   back.

23          Mr. Harris wrote to Your Honor in his letter which is

24   contained in the presentence investigation report how important

12:04 25   it was for him to be involved in the upbringing of his

1    children, and he was personally familiar with the family

2    situation where, although there may be the financial support,

3    there is not the parental -- there is not the father-figure

4    there present in the home.

12:05  5            So Mr. Harris made a decision.  He was in Jamaica, and

6    he could have stayed in Jamaica, could have been perfectly fine

7    there.  Mr. Harris is an accomplished chef.  The presentence

8    investigation report references how he works as a cook, and

9    that's pretty much what he's done during the majority of his

12:05 10   adult life.

11           But Mr. Harris made a decision that he was going to

12   come back.  He made a bad decision.  And as a result of that

13   decision, he has been in custody for the past 7 months.  He

14   recognizes at the conclusion of this case he's going to be

12:05 15   deported back to Jamaica.  He understands that he cannot

16   provide any financial support to his children, and he has two

17   other children besides the two with Racquel he can't provide

18   any financial support to them while he's in jail.

19           So Judge, he knows he made a mistake.  He did come

12:05 20   back in illegally.  The nature of the prior conviction is what

21   drives these guidelines.  If he had done -- if he had done

22   something else which was not an aggravated felony, he would not

23   have been subject to any -- well, not that type of enhancement.

24           So based on this one individual, the one conviction,

12:06 25   the 7 months that he's been in custody to this point, the fact

that he is going to be deported, and the motivation which drove

him to do this, we would ask Your Honor to consider sentencing

Mr. Harris to time served which is 7 months.  Also with the

understanding that, again, he's going to be surrendered to

12:06   immigration for him to be deported.  And he understands that

should he do this again -- he has 7 months' worth of experience

now to understand why this was not a good idea.  So that's our

recommendation, Judge.

**THE COURT:**  Thank you.  With respect to the Title 18

12:06   3553 factors, does the government wish to submit argument or

any statement at this point in time?

**MS. OBERNAUF:**  Your Honor, the government rests on the

previous arguments made regarding the 3553 factors.  And

additionally states that in this case, the defendant's history

12:07   is egregious in the sense that he was in the country initially

committed drug trafficking, fled the country while he was

pending charges, then attempted to illegally re-enter the

country at which point he's convicted, he's sentenced to eight

years' imprisonment, which you would think would be a

12:07   sufficient amount of time to provide or to deter the defendant

from committing additional crimes.  That being said, it was

not.  He was then deported.  And then in March of this year he

came in on a boat from the Bahamas again illegally.

The government's position is that the defendant should

12:08   be sentenced to 30 months' imprisonment followed by supervised

1   release.   Thank you.

2        THE COURT:   Okay.   The Court in considering the Title

3   18, 3553 elements, and imposing sentence must consider -- and

4   the Court does consider -- the four or five elements that is

12:08   5   the nature and circumstances of the offense, the history and

6   the characteristics of the defendant, including his children in

7   this instance, the 13 and 12-year-old child living in the

8   United States and two others elsewhere -- he has four

9   children -- and the types of sentences available, weighing and

12:09   10   considering the seriousness of the crime and the other elements

11   and the intent of Congress, the Court has concluded to taking

12   all these into consideration, it should enter a sentence that

13   is within the guideline range.

14        Before I take the final pronouncement of sentence, I

12:09   15   would ask if the -- would advise the defendant he has a right

16   to make a statement or present any information to mitigate his

17   sentence that he wishes.   And I inquire through Mr. Abrams, his

18   counsel to him, as opposed to what I think is not really good

19   practice to address the defendant directly, although the

12:10   20   appellate court seems to favor that.

21        But nevertheless, does the defendant, directed-above

22   defendant and counsel wish to make a last further statement?

23        MR. ABRAMS:   He would like to address you briefly,

24   Judge.

12:10   25        THE COURT:   All right.   He can remain seated.

1      **MR. ABRAMS:**  He has restraints there on his --

2      **THE COURT:**  Joyce, he does need to raise his right

3 hand.

4 Thereupon,

12:10    5                     **ONEIL ANTHONY HARRIS,**

6 having been duly sworn by the courtroom deputy, testified as

7 follows:

8      **THE DEFENDANT:**  Yes, ma'am.

9      **THE COURTROOM DEPUTY:**  Thank you.

12:10   10      **THE DEFENDANT:**  First off, my name is Oneil Harris and

11 I've committed a crime and made a bad mistake by doing bad

12 things in the first place and getting convicted for that.  And

13 leaving and going to Jamaica and try to come back.  I

14 understand that.

12:11   15      But as my attorney said earlier, I raised in a house

16 where my father was there physically, but -- I mean

17 financially, but physically and emotionally he was detached.

18 And I never want my son or my next daughter -- because I have

19 three kids in the U.S. -- raised with me just missing like

12:11   20 that.

21      And I acknowledge my wrong and my mistake, and I'm

22 sorry for that, and I'm not just saying that I'm sorry because

23 I'm in this position.  I'm truly sorry to commit an offense to

24 where I'm being punished now and caused problems and strain

12:11   25 over my wife over the past five, six years.  She's the only

1    supporter for me and three of my four kids, and it is hard.  I

2    feel less than a man have to be sitting in front of the Court

3    begging for mercy and forgiveness.

4          I promise -- and I know this, Judge, I will never,

12:12  5    ever make this mistake again by trying to re-enter the U.S.,

6    true, legal way, if I do make an attempt to come back, it's

7    going to be through the proper channels.

8          I beg the Court for mercy, and I apologize for my

9    crime that I committed, and I will never do it again, Judge.

12:12  10   And everything put me aside, is about my kids.  You know, I got

11   a 13-year-old son who is doing real good in basketball and

12   academics, and it's a shame that I'm not there to support him.

13   I never seen him play basketball one time.  I never get to help

14   him with his homework.

12:12  15         I beg the Court for mercy.  As you can see in the

16   discretionary report that they have in here to sentencing, to a

17   reasonable sentence, Your Honor.  I'm sorry.  I'm desperately

18   sorry.  I'm sorry for committing this crime, and I will never

19   do it again, Your Honor.  Thank you.

12:12  20         THE COURT:  Cross-examination?  Does the government

21   wish to cross-examine?

22         MS. OBERNAUF:  No, Your Honor.

23         THE COURT:  Mr. Abrams, is there anything finally that

24   you wish to add since the defendant has testified?

12:13  25         MR. ABRAMS:  No, sir.

1        **THE COURT:**  Does.

2        **MR. ABRAMS:**  No, sir.

3        **THE COURT:**  Does the government have any final

4   statement before sentence is imposed?

12:13   5        **MS. OBERNAUF:**  No, Your Honor.

6        **THE COURT:**  All right.  The Court's pronouncement of

7   judgment in this matter is -- and the opinion of the Court

8   sufficient but not greater than necessary to reflect the

9   seriousness of the crime, promote respect for the law, to

12:13  10   provide just punishment for the offense, and to protect the

11   public from future crimes by the defendant.

12        It is also the finding of the Court that the defendant

13   is unable to pay a fine.  Therefore no fine is imposed.

14        It is the judgment of the Court that you be remanded

12:14  15   to custody of the Bureau of Prisons for imprisonment for 24

16   months, the low end of the guideline range as -- for the

17   offense set forth in count 14.

18        Upon release from custody, you shall serve one year of

19   supervised release where you are directed to abide by all the

12:14  20   rules and regulations regarding the payment of fines or

21   whatever else may be required and not commit any future crimes,

22   prohibited from possessing a firearm or dangerous device, or

23   possessing a controlled substance, must cooperate in the

24   collection of the DNA evidence, and comply with all conditions

12:15  25   of supervised release, including surrendering to immigration

1  after imprisonment for deportation, and cooperating with

2  immigration authorities during removal proceedings as noted in

3  part G of the presentence report.  A $100 assessment is

4  herewith imposed.

12:15  5      Now, with respect to that sentence as pronounced and

6  imposed, does the defendant or his counsel object to the

7  Court's findings of fact or the manner in which the sentence

8  was pronounced?

9      **MR. ABRAMS:**  Yes, sir.  Just for the record, we would

12:15  10  object to the substantive and procedural reasonableness of the

11  departure slash variance from the calculated advisory

12  guidelines range for the reasons articulated during the

13  hearing.

14      **THE COURT:**  Does the government have any objection to

12:16  15  the Court's findings of fact or the manner in which sentence

16  was pronounced?

17      **MS. OBERNAUF:**  No, Your Honor.

18      **THE COURT:**  The defendant's advised that he has a

19  right to appeal.  If he wishes to do so, he must do so within

12:16  20  14 days.  If he cannot afford a lawyer, one will be appointed

21  for him upon appropriate and proper showing of indigency.  It's

22  critical after 14 days -- let's see.  If you cannot pay the

23  cost of appeal, you may request to have in-forma pauperis

24  status.  All right.  The defendant is remanded to the custody

12:17  25  of the United States marshal.

1          **MR. ABRAMS:**  Your Honor, may we request that Your

2     Honor recommend that the Bureau of Prisons designate either FCI

3     Miami or FCI Coleman for service of this term?

4          **THE COURT:**  Yes, of course.  I have no objection, no

12:17   5     problem with that, but is it not -- isn't his family and

6     everybody not in Chicago.  Have I been mistaken?  I thought his

7     children -- in any event, if that's your motion, yes, I will

8     make that motion.

9          **MR. ABRAMS:**  They're moving to Coral Springs, Judge,

12:17  10     so they're going to be down here.

11          **THE COURT:**  That's fine.

12          **MR. ABRAMS:**  And Judge -- I'm sorry.  The final thing

13     I wanted to ask IS would a term of supervised release be

14     non-reporting if he is deported from the United States?

12:17  15          **THE COURT:**  Without objection by the government, that

16     is correct.  It will be non-reporting upon his deportation, as

17     long as he is outside the presence of the United States,

18     outside of the continental limits, the supervised release will

19     be non reporting.

12:18  20          If, however, he should re-enter the United States for

21     any reason, with or without permission, he should not come back

22     without should of course, but should he attempt to do that, it

23     would be reporting.

24          **MR. ABRAMS:**  Yes, sir.  Thank you.

12:18  25          **THE COURT:**  The defendant is remanded to the United

1    States marshal.

2

3    *      *      *      *      *      *      *      *      *      *      *

4          *(Thereupon, proceedings were held but not transcribed.)*

5    *      *      *      *      *      *      *      *      *      *      *

6

7

8        (Thereupon, the above portion of the hearing was concluded.)

9

10                           *           *           *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T E**

2

3          I hereby certify that the foregoing is an accurate

4    transcription of the proceedings in the above-entitled

5    matter.

6

7          12/04/2017

8    _____          _____

9    DATE COMPLETED          GIZELLA BAAN-PROULX, RPR, FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$100** [2] - 24:20, 41:3
**$9,500** [1] - 24:20

## 1

**1** [3] - 16:7, 24:18, 30:17
**10-level** [2] - 27:21, 33:15
**10-point** [1] - 27:16
**11** [1] - 22:15
**11:00** [1] - 8:2
**11th** [7] - 11:24, 16:9, 21:25, 25:23, 26:2, 26:10, 33:6
**12** [1] - 20:10
**12-year-old** [2] - 34:21, 37:7
**12/04/2017** [1] - 44:7
**12th** [3] - 21:25, 22:3, 22:15
**13** [1] - 37:7
**13-year-old** [2] - 34:20, 39:11
**1326** [1] - 12:4
**1326(b)2** [1] - 25:6
**13th** [2] - 19:9, 22:24
**14** [4] - 12:3, 40:17, 41:20, 41:22
**15** [3] - 28:23, 30:18, 34:15
**16** [1] - 6:11
**18** [7] - 25:5, 28:5, 32:9, 34:4, 34:7, 36:9, 37:3
**18m** [1] - 34:1
**18th** [4] - 3:1, 6:10, 13:10, 19:19
**1:00** [1] - 10:12
**1:30** [1] - 10:13

## 2

**2** [5] - 24:18, 31:4, 31:7, 31:19, 31:20
**20** [3] - 3:7, 15:14, 25:7
**2002** [4] - 16:7, 18:5, 27:9, 28:23
**201.2** [1] - 29:14
**2012** [5] - 16:9, 18:11, 21:25, 22:1, 22:15
**2013** [2] - 19:9, 22:24
**2016** [2] - 19:19, 20:2
**2017** [1] - 20:10
**21** [1] - 28:18
**24** [3] - 28:4, 33:16, 40:15
**24-to-30-month** [1] - 27:18
**24th** [1] - 20:2
**25th** [2] - 4:7, 4:11
**2:00** [1] - 10:22
**2nd** [4] - 6:10, 12:8, 23:20

## 3

**3** [5] - 24:7, 24:15, 24:19, 26:18, 30:16
**30** [4] - 27:19, 28:4, 33:16, 36:25
**33** [1] - 3:9

**35** [1] - 3:10
**3553** [7] - 28:5, 28:7, 32:9, 34:8, 36:10, 36:13, 37:3
**3553(a** [1] - 34:2

## 4

**4** [1] - 16:8
**44-year-old** [1] - 34:16
**46** [1] - 28:17
**4th** [2] - 12:9, 23:21

## 5

**5** [2] - 24:18, 24:19
**5000** [1] - 16:8
**56** [1] - 3:10
**5th** [3] - 12:22, 13:8, 13:9

## 6

**6** [2] - 24:7, 24:15
**6:30** [1] - 7:9

## 7

**7** [7] - 31:8, 31:15, 31:16, 35:13, 35:25, 36:3, 36:6

## 8

**8** [6] - 12:4, 24:18, 31:4, 31:7, 31:19, 31:20
**8-year** [1] - 19:13

## 9

**92** [1] - 23:20
**96** [1] - 23:21
**98** [1] - 12:21
**9:58** [2] - 3:1, 3:17

## A

**abide** [1] - 40:19
**able** [2] - 9:22, 9:24
**aboard** [1] - 6:17
**above-entitled** [1] - 44:4
**Abrams** [6] - 11:14, 12:9, 12:20, 28:1, 37:17, 39:23
**ABRAMS** [28] - 11:16, 12:21, 13:5, 13:8, 13:24, 20:21, 21:1, 21:5, 21:12, 21:15, 23:16, 28:6, 28:9, 28:12, 31:15, 31:19, 31:22, 32:6, 34:5, 37:23, 38:1, 39:25, 40:2, 41:9, 42:1, 42:9, 42:12,

42:24
**academics** [1] - 39:12
**acceptable** [1] - 13:3
**accompanied** [1] - 8:10
**accomplished** [1] - 35:7
**according** [1] - 31:6
**account** [5] - 25:12, 30:19, 31:1, 32:13, 32:17
**accounted** [1] - 30:6
**accurate** [1] - 44:3
**acknowledge** [1] - 38:21
**acknowledged** [2] - 18:2, 25:23
**act** [3] - 27:5, 29:4, 29:5
**actual** [1] - 25:24
**add** [1] - 39:24
**added** [2] - 3:25, 4:17
**additional** [2] - 30:12, 36:21
**additionally** [1] - 36:14
**address** [2] - 37:19, 37:23
**adequate** [1] - 32:20
**administrative** [2] - 11:24, 20:12
**adult** [1] - 35:10
**advance** [1] - 6:6
**advise** [3] - 10:4, 10:21, 37:15
**advised** [1] - 41:18
**advisory** [5] - 23:23, 24:17, 29:19, 33:16, 41:11
**affected** [1] - 24:11
**affects** [1] - 16:6
**afford** [2] - 32:20, 41:20
**afternoon** [2] - 7:8, 9:15
**agencies** [1] - 15:13
**agents** [1] - 18:16
**aggravated** [13] - 12:4, 17:14, 17:18, 18:3, 18:23, 20:4, 25:8, 25:20, 25:21, 26:14, 32:16, 34:10, 35:22
**ago** [8] - 3:7, 3:18, 4:18, 5:7, 5:12, 29:9, 30:18, 34:16
**agree** [1] - 21:8
**ahead** [7] - 3:15, 8:17, 9:18, 9:19, 10:11, 18:18, 21:10
**alien** [1] - 32:14
**aliens** [1] - 15:22
**alleged** [1] - 12:3
**allegedly** [1] - 6:17
**amount** [1] - 36:20
**analysis** [2] - 3:9, 5:3
**analyzing** [1] - 3:4
**announce** [2] - 12:1, 23:25
**answer** [1] - 5:11
**ANTHONY** [1] - 38:5
**Anthony** [2] - 12:2, 15:25
**anticipate** [1] - 3:22
**apologize** [2] - 5:13, 39:8
**appeal** [2] - 41:19, 41:23
**appellate** [1] - 37:20
**applicable** [1] - 28:24
**application** [1] - 32:3
**applied** [1] - 33:15

**applies** [2] - 28:18, 29:23
**apply** [5] - 25:17, 27:14, 27:16, 28:17, 30:2
**appointed** [2] - 8:21, 41:20
**approach** [1] - 6:13
**appropriate** [6] - 31:1, 31:9, 33:10, 33:11, 33:23, 41:21
**appropriately** [1] - 31:3
**approximate** [2] - 19:8, 19:9
**argue** [1] - 26:16
**argued** [1] - 33:1
**arguing** [2] - 27:14, 31:16
**argument** [5] - 6:13, 8:9, 24:25, 32:3, 36:10
**arguments** [3] - 5:9, 36:13
**arises** [1] - 25:10
**arrange** [1] - 11:10
**arrest** [5] - 17:10, 17:13, 18:4, 20:11, 20:12
**arrested** [3] - 16:7, 18:5, 27:9
**arrests** [2] - 16:5, 17:9
**articulated** [1] - 41:12
**aside** [1] - 39:10
**asserted** [1] - 8:4
**assessment** [2] - 24:20, 41:3
**assistant** [1] - 8:20
**attempt** [4] - 8:6, 25:11, 39:6, 42:22
**attempted** [1] - 36:17
**attempting** [1] - 16:15
**attempts** [1] - 27:12
**attention** [1] - 10:19
**attorney** [1] - 38:15
**attorneys** [2] - 8:20, 28:16
**authorities** [1] - 41:2
**available** [1] - 37:9

**B**

**BAAN** [1] - 44:9
**BAAN-PROULX** [1] - 44:9
**background** [3] - 3:8, 12:5, 15:11
**bad** [4] - 9:10, 35:12, 38:11
**Bahamas** [1] - 36:23
**based** [7] - 25:7, 27:4, 29:25, 30:12, 32:9, 34:6, 35:24
**basic** [1] - 24:10
**basis** [1] - 17:7
**basketball** [2] - 39:11, 39:13
**Beach** [1] - 16:10
**became** [2] - 15:19, 28:25
**become** [1] - 29:4
**beg** [2] - 39:8, 39:15
**began** [1] - 6:2
**begging** [1] - 39:3
**behalf** [1] - 11:18
**between** [3] - 21:25, 29:15, 31:24
**beyond** [2] - 4:2, 8:14
**blanche** [1] - 29:2
**boat** [1] - 36:23

**border** [4] - 17:2, 17:22, 18:16, 18:17
**Border** [7] - 15:3, 15:5, 15:15, 16:10, 16:14, 16:17, 20:8
**Borer** [1] - 14:8
**Boston** [1] - 6:19
**box** [1] - 7:17
**briefed** [1] - 24:22
**briefly** [3] - 15:11, 16:3, 37:23
**briefs** [1] - 33:6
**bring** [6] - 6:24, 10:18, 12:15, 13:10, 28:3, 31:22
**brother** [1] - 7:14
**Brown** [1] - 16:1
**Bureau** [2] - 40:15, 42:2
**BY** [3] - 14:24, 19:12, 21:15
**bypass** [1] - 4:19

**C**

**calculated** [4] - 24:5, 30:24, 31:3, 41:11
**calculation** [5] - 24:9, 24:10, 25:10, 30:25, 33:14
**callous** [1] - 8:15
**candor** [1] - 6:5
**cannabis** [2] - 16:7, 18:22
**cannot** [3] - 35:15, 41:20, 41:22
**care** [1] - 11:11
**Careen** [1] - 12:24
**careen** [1] - 13:18
**carefully** [1] - 3:3
**carry** [1] - 33:9
**carte** [1] - 29:1
**case** [27] - 3:4, 6:25, 8:23, 9:16, 10:11, 11:1, 11:15, 12:2, 16:23, 20:11, 22:7, 26:12, 28:22, 28:23, 28:24, 29:8, 29:9, 29:24, 30:10, 30:18, 33:1, 33:7, 33:8, 34:11, 34:14, 35:14, 36:14
**cases** [5] - 4:25, 5:3, 28:18, 34:3
**category** [5] - 24:7, 24:15, 26:17, 30:16, 30:17
**caused** [1] - 38:24
**CBP** [6] - 15:6, 15:8, 15:9, 15:12, 15:19, 15:20
**Center** [1] - 7:7
**certain** [2] - 25:16, 34:12
**certainly** [1] - 3:23
**certify** [1] - 44:3
**chance** [2] - 7:2, 15:24
**change** [2] - 6:13, 33:20
**changed** [4] - 5:7, 29:14, 30:1, 30:23
**changes** [2] - 6:13, 33:22
**changing** [1] - 29:7
**channels** [1] - 39:7
**characteristics** [1] - 37:6
**charge** [5] - 16:22, 17:10, 22:12, 22:14, 33:3
**charged** [3] - 6:16, 12:2, 17:14
**charges** [2] - 27:11, 36:17

**check** [1] - 8:3
**checking** [1] - 8:11
**chef** [1] - 35:7
**Chicago** [4] - 18:8, 22:8, 42:6
**child** [2] - 8:7, 37:7
**children** [8] - 34:17, 34:21, 35:1, 35:16, 35:17, 37:6, 37:9, 42:7
**chooses** [1] - 30:7
**Circuit** [5] - 11:25, 25:23, 26:2, 26:10, 33:6
**circumstances** [3] - 33:1, 34:11, 37:5
**cited** [4] - 17:7, 17:13, 26:3, 28:22
**clear** [4] - 26:3, 32:24, 33:2
**clerk** [1] - 13:19
**clerk's** [1] - 3:18
**client** [4] - 9:5, 10:2, 11:5, 11:6
**close** [1] - 22:15
**Code** [2] - 25:6, 34:2
**Coleman** [1] - 42:3
**colleague** [1] - 10:16
**collection** [1] - 40:24
**collectively** [1] - 15:14
**Colorado** [2] - 7:15, 8:13
**coming** [2] - 27:6, 34:9
**comment** [1] - 7:3
**comments** [1] - 3:5
**Commission** [7] - 11:25, 25:11, 29:1, 29:3, 29:5, 29:14
**commit** [2] - 38:23, 40:21
**committed** [5] - 26:6, 26:19, 36:16, 38:11, 39:9
**committing** [5] - 26:23, 27:1, 27:5, 36:21, 39:18
**communicate** [2] - 9:22, 9:25
**complaining** [1] - 5:15
**COMPLETED** [1] - 44:9
**completed** [1] - 19:17
**complies** [3] - 11:4, 11:13, 13:13
**comply** [1] - 40:24
**concern** [2] - 7:11, 7:12
**conclude** [1] - 23:23
**concluded** [2] - 37:11, 43:8
**conclusion** [2] - 31:11, 35:14
**conditions** [1] - 40:24
**conduct** [1] - 4:3
**confer** [1] - 10:2
**conference** [2] - 10:7, 11:2
**conflict** [2] - 25:18, 32:10
**conflicts** [1] - 9:9
**Congress** [8] - 28:19, 29:4, 29:5, 32:2, 32:24, 33:10, 37:11
**Congress'** [2] - 25:12, 32:13
**congressional** [2] - 28:14, 29:6
**consider** [6] - 6:12, 12:16, 30:8, 31:10, 34:12, 36:2, 37:3, 37:4
**consideration** [4] - 28:4, 31:5, 34:1, 37:12
**considering** [3] - 10:3, 37:2, 37:10
**constructing** [1] - 3:5

**contact** [1] - 10:16
**contained** [4] - 5:25, 20:22, 34:6, 34:24
**contest** [1] - 20:23
**continental** [1] - 42:18
**continue** [4] - 6:23, 8:25, 10:12
**contrary** [1] - 29:6
**controlled** [2] - 34:15, 40:23
**convicted** [16] - 17:18, 17:21, 17:24, 18:22, 19:5, 19:6, 22:23, 25:5, 25:8, 25:20, 25:21, 26:4, 26:14, 29:25, 36:18, 38:12
**conviction** [11] - 19:9, 20:14, 25:16, 26:21, 29:22, 30:10, 31:1, 31:5, 32:16, 35:20, 35:24
**convictions** [5] - 26:9, 27:1, 30:6, 30:8, 34:10
**cook** [1] - 35:8
**cooperate** [1] - 40:23
**cooperating** [1] - 41:1
**copies** [1] - 13:4
**copy** [1] - 3:19
**Coral** [1] - 42:9
**correct** [5] - 4:7, 18:14, 22:22, 24:17, 42:16
**cost** [1] - 41:23
**counsel** [9] - 11:5, 12:10, 12:13, 24:24, 28:22, 32:23, 37:18, 37:22, 41:6
**count** [4] - 12:3, 30:9, 30:11, 40:17
**country** [10] - 16:15, 16:16, 16:18, 17:1, 18:1, 32:15, 34:18, 36:15, 36:16, 36:18
**couple** [2] - 4:15, 9:7
**course** [5] - 7:23, 10:3, 13:3, 42:4, 42:22
**court** [2] - 8:21, 37:20
**COURT** [64] - 4:12, 5:23, 6:6, 6:22, 7:23, 9:17, 10:2, 10:7, 10:15, 10:21, 10:25, 11:4, 11:5, 11:10, 11:14, 11:19, 12:20, 12:25, 13:7, 13:9, 13:13, 13:14, 13:25, 14:6, 14:21, 19:5, 19:8, 19:10, 20:20, 20:25, 21:3, 21:6, 23:6, 23:9, 23:11, 23:14, 23:17, 24:4, 27:21, 27:24, 28:1, 28:7, 28:10, 31:13, 31:16, 31:20, 32:1, 32:7, 32:21, 36:9, 37:2, 37:25, 38:2, 39:20, 39:23, 40:1, 40:3, 40:6, 41:14, 41:18, 42:4, 42:11, 42:15, 42:25
**Court** [35] - 6:7, 6:12, 7:13, 8:17, 12:17, 14:4, 14:5, 15:11, 23:22, 24:16, 24:21, 25:17, 26:11, 26:25, 27:8, 27:14, 29:9, 30:7, 30:24, 32:12, 32:23, 33:8, 33:10, 33:11, 33:12, 33:21, 37:2, 37:4, 37:11, 39:2, 39:8, 39:15, 40:7, 40:12, 40:14
**Court's** [5] - 24:11, 32:17, 40:6, 41:7, 41:15
**court-appointed** [1] - 8:21
**courtesy** [3] - 3:19, 8:19, 9:9
**courtroom** [7] - 8:21, 10:4, 14:2, 14:11, 33:23, 34:19, 38:6

**COURTROOM** [3] - 14:14, 14:18, 38:9
**Courts** [1] - 11:24
**crime** [9] - 26:6, 26:24, 27:1, 27:5, 37:10, 38:11, 39:9, 39:18, 40:9
**crimes** [3] - 36:21, 40:11, 40:21
**criminal** [19] - 15:10, 15:19, 16:5, 17:9, 17:23, 22:12, 22:13, 24:7, 24:15, 26:17, 26:20, 27:1, 30:5, 30:11, 30:13, 30:15, 30:16, 30:19
**critical** [1] - 41:22
**cross** [4] - 20:20, 21:11, 39:20, 39:21
**CROSS** [1] - 21:14
**cross-examination** [2] - 20:20, 39:20
**cross-examine** [1] - 39:21
**crux** [1] - 32:8
**crystallized** [1] - 4:17
**current** [2] - 29:15, 29:17
**custody** [11] - 8:8, 17:25, 19:18, 19:20, 31:8, 31:13, 35:13, 35:25, 40:15, 40:18, 41:24
**customary** [1] - 3:11
**Customs** [7] - 14:7, 15:3, 15:5, 15:15, 19:18, 21:18, 24:12

# D

**dangerous** [1] - 40:22
**Dania** [1] - 16:10
**date** [8] - 7:11, 19:5, 19:8, 19:9, 21:18, 21:22, 22:9, 25:24
**DATE** [1] - 44:9
**dates** [1] - 26:8
**daughter** [1] - 38:18
**days** [6] - 6:11, 10:15, 23:3, 23:4, 41:20, 41:22
**deal** [2] - 26:23, 30:21
**dealing** [1] - 32:2
**December** [5] - 16:9, 21:25, 22:15
**decide** [2] - 33:10, 33:11
**decided** [1] - 33:4
**decision** [5] - 10:22, 35:5, 35:11, 35:12, 35:13
**DEFENDANT** [2] - 38:8, 38:10
**defendant** [32] - 5:25, 8:1, 9:17, 10:17, 12:9, 15:25, 24:1, 25:5, 25:8, 25:15, 25:19, 26:4, 26:12, 27:4, 27:9, 27:17, 32:23, 33:3, 33:14, 36:20, 36:24, 37:6, 37:15, 37:19, 37:21, 37:22, 39:24, 40:11, 40:12, 41:6, 41:24, 42:25
**defendant's** [6] - 7:14, 7:15, 7:16, 32:12, 36:14, 41:18
**defenders** [1] - 8:21
**defense** [14] - 3:4, 4:15, 4:20, 8:13, 12:14, 13:22, 23:14, 23:21, 24:9, 24:23, 26:16, 28:10, 28:16, 34:3
**deference** [1] - 9:13
**delineating** [1] - 24:24
**deliver** [2] - 16:7, 18:22
**denial** [1] - 31:17

**departure** [5] - 23:19, 24:12, 24:22, 28:2, 41:11
**departures** [1] - 30:3
**deportation** [10] - 12:3, 15:17, 17:3, 18:2, 20:3, 21:20, 26:8, 33:19, 41:1, 42:16
**deported** [9] - 22:8, 22:14, 25:15, 31:12, 35:15, 36:1, 36:5, 36:22, 42:14
**deportee** [1] - 26:6
**DEPUTY** [4] - 11:13, 14:14, 14:18, 38:9
**deputy** [5] - 8:22, 10:4, 14:11, 33:23, 38:6
**describe** [2] - 15:11, 16:3
**designate** [1] - 42:2
**desire** [1] - 25:12
**desperately** [1] - 39:17
**detached** [1] - 38:17
**Detention** [1] - 7:7
**detention** [1] - 15:17
**deter** [1] - 36:20
**determine** [1] - 23:23
**determined** [1] - 24:21
**determines** [1] - 32:23
**determining** [1] - 30:19
**deterrence** [2] - 26:5, 32:20
**device** [1] - 40:22
**dictated** [1] - 3:7
**difference** [2] - 29:15, 31:24
**difficult** [4] - 7:19, 7:20, 7:21, 8:2
**DIRECT** [1] - 14:23
**directed** [2] - 37:21, 40:19
**directed-above** [1] - 37:21
**directly** [1] - 37:19
**directs** [1] - 22:4
**disclosed** [1] - 4:10
**discretion** [3] - 30:7, 33:9, 33:13
**discretionary** [1] - 39:16
**dispute** [1] - 25:9
**distinction** [1] - 26:7
**District** [2] - 8:20, 15:4
**division** [1] - 15:18
**DNA** [1] - 40:24
**docket** [1] - 12:21
**document** [2] - 23:20, 23:21
**documents** [9] - 12:11, 12:14, 12:17, 13:23, 15:24, 16:23, 17:6, 17:12, 17:17
**done** [4] - 3:12, 35:9, 35:21
**down** [3] - 10:25, 23:9, 42:10
**drives** [1] - 35:21
**driving** [1] - 34:14
**drop** [1] - 4:3
**drove** [1] - 36:1
**drug** [4] - 17:13, 20:14, 27:10, 36:16
**due** [1] - 6:12
**duly** [2] - 14:11, 38:6
**dumped** [1] - 4:4
**during** [3] - 35:9, 41:2, 41:12

## E

**e-mails** [1] - 7:9
**early** [1] - 5:16
**effect** [1] - 29:10
**egregious** [1] - 36:15
**eight** [3] - 19:2, 20:13, 36:18
**either** [3] - 8:19, 12:18, 42:2
**elements** [4] - 33:20, 37:3, 37:4, 37:10
**elsewhere** [2] - 8:13, 37:8
**emotionally** [1] - 38:17
**encounter** [2] - 20:6, 20:8
**end** [1] - 40:16
**enforcement** [3] - 15:9, 15:12, 15:19
**Enforcement** [1] - 19:18
**enhanced** [2] - 25:13, 25:25
**enhancement** [8] - 25:17, 27:15, 27:16, 27:22, 29:23, 30:2, 33:15, 35:23
**enhancements** [2] - 6:4, 26:23
**enter** [7] - 16:18, 18:11, 27:12, 36:17, 37:12, 39:5, 42:20
**entered** [1] - 23:2
**entering** [2] - 16:24, 17:11
**entitled** [2] - 9:9, 44:4
**entry** [2] - 12:21, 16:16
**event** [1] - 42:7
**evidence** [6] - 6:3, 7:12, 13:19, 23:17, 24:12, 40:24
**evolved** [1] - 33:4
**evolving** [1] - 28:8
**examination** [2] - 20:20, 39:20
**EXAMINATION** [2] - 14:23, 21:14
**examine** [1] - 39:21
**exchanged** [1] - 7:9
**excuse** [3] - 7:19, 13:10, 19:5
**executed** [1] - 22:19
**execution** [1] - 17:25
**exercise** [1] - 33:13
**exists** [1] - 30:23
**expedited** [12] - 15:21, 16:19, 16:20, 16:25, 17:3, 17:8, 17:12, 17:25, 19:22, 21:22, 22:18, 23:1
**experience** [2] - 15:17, 36:6
**experienced** [1] - 3:21
**express** [1] - 7:11
**extradited** [1] - 18:20
**extremely** [1] - 20:21
**eye** [1] - 10:8

## F

**F-E-R-N-A-N-D-E-Z** [1] - 14:19
**fact** [12] - 8:4, 8:6, 8:7, 17:17, 21:3, 25:7, 26:13, 27:4, 30:20, 35:25, 41:7, 41:15
**factors** [5] - 32:9, 34:6, 34:12, 36:10, 36:13
**facts** [3] - 5:25, 20:24, 25:13

**factual** [1] - 33:2
**fair** [1] - 23:18
**familiar** [2] - 15:21, 35:1
**family** [6] - 7:17, 9:5, 9:21, 9:23, 35:1, 42:5
**far** [2] - 3:8, 4:18
**fastest** [1] - 16:25
**father** [2] - 35:3, 38:16
**father-figure** [1] - 35:3
**favor** [2] - 30:21, 37:20
**FCI** [2] - 42:2, 42:3
**FCRR** [1] - 44:9
**federal** [1] - 8:20
**Federal** [1] - 7:7
**felon** [2] - 18:3, 20:4
**felony** [13] - 12:4, 17:15, 17:18, 18:23, 25:8, 25:16, 25:20, 25:22, 26:14, 32:16, 32:25, 34:10, 35:22
**Fernandez** [4] - 14:8, 14:17, 24:13, 27:8
**FERNANDEZ** [1] - 14:10
**few** [2] - 23:3, 23:4
**figure** [1] - 35:3
**file** [5] - 5:8, 5:11, 6:11, 13:12, 15:25
**filed** [10] - 5:12, 6:9, 12:6, 12:8, 12:15, 12:21, 13:5, 13:6, 23:19
**files** [2] - 3:18, 10:19
**final** [3] - 37:14, 40:3, 42:12
**finally** [1] - 39:23
**financial** [3] - 35:2, 35:16, 35:18
**financially** [1] - 38:17
**findings** [2] - 41:7, 41:15
**fine** [9] - 4:15, 4:16, 11:10, 24:19, 33:19, 35:6, 40:13, 42:11
**fines** [1] - 40:20
**finish** [1] - 19:22
**finished** [2] - 3:7, 4:6
**firearm** [1] - 40:22
**first** [8] - 6:25, 12:13, 23:22, 24:6, 26:15, 28:21, 38:10, 38:12
**five** [3] - 30:15, 37:4, 38:25
**fled** [1] - 36:16
**floor** [2] - 10:7, 11:15
**Florida** [4] - 8:20, 15:4, 16:10, 20:9
**flown** [1] - 7:18
**follow** [1] - 13:2
**followed** [3] - 24:18, 32:2, 36:25
**following** [1] - 11:23
**follows** [2] - 14:12, 38:7
**foregoing** [1] - 44:3
**foresee** [1] - 17:23
**forgiveness** [1] - 39:3
**forma** [1] - 41:23
**format** [1] - 11:23
**formerly** [1] - 32:4
**forth** [1] - 40:17
**fortuities** [1] - 26:8
**forward** [2] - 10:1, 11:1
**four** [4] - 34:16, 37:4, 37:8, 39:1

**friend** [3] - 13:16, 13:17
**front** [1] - 39:2
**full** [1] - 14:15
**furnished** [1] - 8:16
**future** [2] - 40:11, 40:21

## G

**general** [1] - 12:5
**generally** [1] - 28:19
**gentleman** [2] - 34:11, 34:16
**given** [4] - 7:20, 13:4, 26:7, 31:1
**GIZELLA** [1] - 44:9
**government** [35] - 3:5, 3:13, 3:16, 3:17, 3:22, 4:12, 4:23, 5:6, 5:18, 6:2, 7:24, 8:6, 8:16, 12:7, 12:13, 13:4, 14:3, 23:6, 24:6, 24:10, 24:23, 27:13, 27:19, 28:11, 28:13, 30:20, 33:6, 33:12, 36:10, 36:12, 39:20, 40:3, 41:14, 42:15
**government's** [16] - 3:20, 4:18, 5:24, 6:8, 9:10, 10:18, 12:9, 23:19, 25:1, 26:3, 26:22, 27:3, 28:2, 31:17, 32:22, 36:24
**grams** [1] - 16:8
**granted** [1] - 33:12
**greater** [2] - 26:5, 40:8
**guardian** [1] - 8:10
**guess** [1] - 6:15
**Guideline** [1] - 11:25
**guideline** [17] - 23:23, 24:6, 24:17, 24:18, 24:21, 25:14, 26:12, 27:16, 28:2, 30:25, 31:3, 31:17, 33:13, 33:16, 33:20, 37:13, 40:16
**guidelines** [20] - 13:1, 25:11, 28:24, 29:3, 29:10, 29:11, 29:19, 29:20, 29:21, 30:1, 30:4, 30:7, 30:25, 31:3, 31:7, 31:23, 32:10, 35:21, 41:12

## H

**hand** [1] - 38:3
**hard** [1] - 39:1
**Harris** [26] - 6:25, 11:1, 11:15, 11:22, 12:2, 13:16, 15:25, 16:4, 16:17, 18:17, 20:6, 21:25, 22:20, 29:24, 30:2, 30:11, 30:12, 31:10, 34:14, 34:16, 34:23, 35:5, 35:7, 35:11, 36:3, 38:10
**HARRIS** [1] - 38:5
**Harris'** [10] - 12:23, 16:3, 17:12, 21:20, 29:9, 29:24, 30:10, 30:19, 31:3, 31:7
**harsher** [1] - 32:14
**hear** [7] - 3:15, 9:2, 14:5, 21:7, 28:13, 28:16, 31:23
**heard** [7] - 3:16, 20:22, 23:18, 24:12, 27:8, 29:11, 32:4
**hearing** [12] - 6:4, 6:23, 7:9, 7:18, 8:18, 9:6, 12:12, 13:19, 13:20, 25:3, 41:13, 43:8

**held** [1] - 43:4
**help** [2] - 9:7, 39:13
**helps** [1] - 25:3
**hereby** [1] - 44:3
**herewith** [1] - 41:4
**history** [16] - 16:3, 16:4, 16:6, 24:7, 24:15, 26:17, 26:20, 30:5, 30:11, 30:13, 30:15, 30:16, 30:20, 36:14, 37:5
**hold** [1] - 11:21
**home** [1] - 35:4
**homework** [1] - 39:14
**Honor** [28] - 4:9, 5:22, 6:21, 11:17, 12:19, 12:23, 14:3, 23:8, 23:13, 24:2, 25:4, 28:9, 29:11, 29:12, 31:9, 31:23, 32:8, 34:6, 34:23, 36:2, 36:12, 39:17, 39:19, 39:22, 40:5, 41:17, 42:1, 42:2
**Honor's** [1] - 34:8
**honored** [2] - 18:18, 22:17
**hour** [4] - 3:18, 4:18, 5:7, 5:15
**hours** [8] - 3:2, 4:24, 4:25, 5:14, 5:15, 7:21, 8:24, 9:8
**house** [1] - 38:15

## I

**idea** [1] - 36:7
**ideas** [1] - 5:3
**illegal** [5] - 15:22, 16:15, 26:5, 26:19, 26:24
**illegally** [6] - 16:15, 16:18, 16:24, 35:20, 36:17, 36:23
**Illinois** [13] - 18:8, 18:18, 18:20, 18:21, 19:1, 19:6, 21:21, 22:8, 22:11, 22:14, 22:20, 27:9, 30:10
**immigration** [12] - 15:12, 15:25, 16:3, 16:4, 16:6, 16:21, 16:22, 19:23, 20:12, 36:5, 40:25, 41:2
**Immigration** [3] - 15:14, 19:18, 21:18
**immigration's** [1] - 20:6
**immigration-related** [1] - 15:12
**impediment** [2] - 17:10, 22:18
**impelled** [1] - 3:5
**important** [1] - 34:24
**importantly** [1] - 9:24
**impose** [1] - 32:17
**imposed** [4] - 40:4, 40:13, 41:4, 41:6
**imposing** [1] - 37:3
**imprisonment** [9] - 19:3, 19:13, 19:17, 27:18, 27:20, 36:19, 36:25, 40:15, 41:1
**improperly** [1] - 30:14
**in-forma** [1] - 41:23
**including** [3] - 6:6, 37:6, 40:25
**increase** [1] - 32:12
**increased** [6] - 25:6, 25:12, 26:13, 26:17, 26:18, 27:13
**indicate** [1] - 8:5
**indicates** [1] - 12:25
**indicating** [1] - 8:8
**indigency** [1] - 41:21

**individual** [3] - 12:24, 29:22, 35:24
**individuals** [1] - 15:10
**inform** [1] - 7:13
**information** [5] - 6:18, 7:7, 7:20, 9:25, 37:16
**initial** [1] - 4:6
**inquire** [3] - 12:13, 14:20, 37:17
**inquiry** [1] - 13:2
**INS** [2] - 15:18, 15:19
**inspections** [1] - 15:18
**inspector** [1] - 15:18
**instance** [1] - 37:7
**instead** [1] - 29:20
**instruct** [1] - 13:18
**instructions** [1] - 33:7
**instructs** [1] - 33:21
**intent** [7] - 16:7, 18:22, 29:6, 32:1, 32:24, 33:9, 37:11
**interdicted** [3] - 16:9, 16:13, 20:9
**interesting** [2] - 28:12, 28:21
**investigate** [2] - 9:1, 15:9
**investigation** [6] - 6:1, 12:6, 20:23, 34:7, 34:24, 35:8
**involved** [1] - 34:25
**involvement** [1] - 32:25
**involving** [3] - 30:3, 30:4, 34:15
**IS** [1] - 42:13
**issue** [4] - 4:12, 24:24, 25:10, 32:2
**issues** [2] - 4:17, 6:14
**itself** [2] - 7:12, 25:19

## J

**jail** [1] - 35:18
**Jamaica** [4] - 35:5, 35:6, 35:15, 38:13
**Jamaican** [1] - 31:11
**Jessica** [1] - 11:17
**job** [1] - 5:1
**Joyce** [4] - 10:8, 10:21, 11:20, 38:2
**judge** [5] - 7:6, 16:22, 17:3, 28:12, 31:22
**Judge** [16] - 7:22, 10:1, 10:20, 10:24, 11:9, 13:5, 20:21, 23:5, 31:15, 35:19, 36:8, 37:24, 39:4, 39:9, 42:9, 42:12
**judgment** [3] - 10:3, 40:7, 40:14
**July** [3] - 4:6, 4:11, 19:19
**June** [2] - 19:9, 22:23
**justice** [1] - 18:19

## K

**keep** [2] - 10:8, 13:20
**keeping** [1] - 17:11
**Key** [1] - 20:9
**kids** [3] - 38:19, 39:1, 39:10
**kind** [1] - 7:17
**kindly** [1] - 13:10
**known** [3] - 4:12, 4:13, 16:1

**knows** [1] - 35:19

## L

**language** [1] - 30:1
**last** [11] - 3:2, 4:5, 5:19, 5:20, 5:21, 7:21, 7:24, 8:2, 14:15, 30:2, 37:22
**late** [2] - 3:19, 7:11
**law** [12] - 3:23, 4:1, 28:15, 28:20, 29:4, 29:18, 30:23, 32:19, 33:5, 34:9, 40:9
**lawyer** [2] - 4:20, 41:20
**lawyers** [4] - 9:6, 9:18, 10:25, 33:1
**lead** [1] - 25:13
**least** [3] - 4:18, 7:2, 8:6
**leaves** [1] - 33:16
**leaving** [2] - 31:17, 38:13
**left** [2] - 18:14, 27:11
**legal** [1] - 39:6
**legally** [2] - 17:7, 17:11
**less** [1] - 39:2
**lesser** [1] - 34:13
**letter** [2] - 13:16, 34:23
**letters** [7] - 12:17, 12:22, 13:2, 13:6, 13:11, 13:18, 13:23
**level** [4] - 24:7, 24:15, 26:18, 28:3
**lieu** [1] - 16:22
**life** [1] - 35:10
**limited** [1] - 20:22
**limits** [1] - 42:18
**listening** [1] - 9:1
**literally** [1] - 5:14
**lives** [1] - 34:20
**living** [1] - 37:7
**located** [1] - 8:8
**look** [1] - 5:13
**low** [1] - 40:16
**lunch** [1] - 9:7

## M

**ma'am** [3] - 14:13, 15:7, 38:8
**mails** [1] - 7:9
**main** [1] - 29:14
**major** [1] - 33:20
**majority** [1] - 35:9
**man** [1] - 39:2
**mandate** [1] - 32:13
**manner** [3] - 28:14, 41:7, 41:15
**March** [2] - 20:10, 36:22
**mark** [1] - 13:19
**marshal** [4] - 11:2, 13:10, 41:25, 43:1
**Marshal** [2] - 11:6, 11:12
**marshal's** [1] - 11:10
**MARSHALL** [1] - 11:13
**marshals** [1] - 11:11
**Massachusetts** [3] - 6:19, 8:8, 10:16
**materials** [1] - 11:20
**math** [1] - 30:20

**matter** [7] - 12:1, 28:14, 33:7, 33:9, 34:15, 40:7, 44:5
**matters** [6] - 8:5, 26:11, 28:16, 30:3, 34:2, 34:4
**maximum** [1] - 25:7
**mean** [7] - 4:23, 5:13, 6:16, 16:12, 29:19, 38:16
**meaning** [1] - 21:24
**meet** [1] - 10:9
**memoranda** [1] - 33:5
**mention** [1] - 16:5
**mentioned** [2] - 17:6, 20:13
**mercy** [3] - 39:3, 39:8, 39:15
**Miami** [1] - 42:3
**microphone** [1] - 5:23
**midnight** [1] - 4:5
**might** [1] - 33:23
**mind** [2] - 3:16, 5:1
**minimum** [1] - 9:8
**minor** [2] - 8:7
**minors** [1] - 6:17
**minute** [4] - 5:19, 5:20, 5:21, 7:24
**minutes** [1] - 3:7
**missing** [1] - 38:19
**mistake** [4] - 35:19, 38:11, 38:21, 39:5
**mistaken** [2] - 5:12, 42:6
**mitigate** [1] - 37:16
**mixed** [1] - 34:3
**MOLLOY** [8] - 7:6, 9:16, 9:20, 10:6, 10:14, 10:20, 10:24, 11:9
**Molloy** [4] - 6:9, 7:1, 7:3, 10:9
**moment** [1] - 25:4
**month** [1] - 5:12
**months** [14] - 23:1, 24:18, 28:4, 31:4, 31:7, 31:15, 31:16, 31:19, 31:20, 33:17, 35:13, 35:25, 36:3, 40:16
**months'** [3] - 27:19, 36:6, 36:25
**Mork** [4] - 7:8, 9:21, 9:24, 11:20
**morning** [16] - 3:1, 3:3, 4:9, 4:24, 5:10, 5:16, 8:2, 9:15, 11:16, 11:17, 11:21, 14:25, 15:1, 21:16, 21:17, 24:2
**mother** [1] - 7:15
**motion** [18] - 6:8, 12:7, 12:10, 23:19, 24:11, 24:22, 25:1, 26:3, 28:2, 28:7, 28:11, 31:17, 32:9, 32:22, 33:12, 34:4, 42:7, 42:8
**motivation** [1] - 36:1
**moving** [2] - 18:4, 42:9
**MR** [31] - 7:6, 9:16, 9:20, 10:6, 10:14, 10:20, 10:24, 11:9, 11:16, 13:5, 13:8, 13:24, 21:5, 21:12, 21:15, 23:16, 28:9, 28:12, 31:15, 31:19, 31:22, 32:6, 34:5, 37:23, 38:1, 39:25, 40:2, 41:9, 42:1, 42:12, 42:24
**MS** [22] - 5:22, 5:24, 6:21, 11:17, 12:19, 14:3, 14:7, 14:20, 14:24, 19:11, 19:12, 20:19, 23:8, 23:13, 25:4, 27:23, 27:25, 32:8, 36:12, 39:22, 40:5, 41:17
**murder** [1] - 26:24

**must** [4] - 18:14, 37:3, 40:23, 41:19

## N

**name** [5] - 4:7, 14:15, 23:25, 38:10
**named** [1] - 12:24
**Naples** [2] - 4:20, 7:16
**Narciso** [2] - 14:8, 14:17
**NARCISO** [2] - 14:10, 14:18
**national** [1] - 31:11
**Naturalization** [1] - 15:15
**nature** [3] - 7:12, 35:20, 37:5
**near** [1] - 20:9
**necessary** [2] - 9:3, 40:8
**need** [9] - 5:10, 7:4, 9:2, 10:15, 10:16, 11:5, 32:17, 33:21, 38:2
**needs** [1] - 14:5
**negligence** [1] - 10:18
**never** [6] - 38:18, 39:4, 39:9, 39:13, 39:18
**nevertheless** [1] - 37:21
**new** [1] - 9:25
**next** [7] - 6:25, 10:11, 10:15, 20:6, 20:8, 33:18, 38:18
**nice** [1] - 8:17
**night** [3] - 4:5, 7:21, 8:2
**nilly** [1] - 3:17
**non** [3] - 42:14, 42:16, 42:19
**non-reporting** [2] - 42:14, 42:16
**normal** [1] - 9:5
**note** [1] - 28:22
**noted** [2] - 29:13, 41:2
**nothing** [3] - 3:16, 5:6, 23:4
**notify** [1] - 8:21
**number** [2] - 23:20, 23:21

## O

**o'clock** [2] - 8:3, 10:22
**OBERNAUF** [22] - 5:22, 5:24, 6:21, 11:17, 12:19, 14:3, 14:7, 14:20, 14:24, 19:11, 19:12, 20:19, 23:8, 23:13, 25:4, 27:23, 27:25, 32:8, 36:12, 39:22, 40:5, 41:17
**Obernauf** [10] - 4:4, 4:23, 10:10, 10:21, 11:18, 12:10, 12:18, 19:10, 25:2, 32:7
**object** [2] - 41:6, 41:10
**objected** [2] - 5:25, 32:22
**objection** [6] - 3:1, 24:9, 24:16, 41:14, 42:4, 42:15
**objections** [8] - 3:3, 3:9, 3:14, 4:13, 5:11, 6:2, 6:9
**obviously** [3] - 3:21, 9:22, 23:18
**occurred** [1] - 34:15
**October** [6] - 10:8, 12:8, 12:9, 12:22, 13:8, 13:9, 23:20
**offense** [9] - 19:1, 22:23, 24:6, 24:15,

32:19, 37:5, 38:23, 40:10, 40:17
**office** [6] - 3:18, 4:6, 11:24, 24:8, 24:15, 33:21
**officer** [9] - 14:8, 15:2, 15:9, 15:12, 15:19, 18:2, 23:9, 23:24, 23:25
**Officer** [3] - 24:5, 24:13, 27:8
**OFFICER** [2] - 11:4, 13:13
**officers** [1] - 20:3
**Ohio** [1] - 34:20
**old** [2] - 28:23, 29:16
**once** [2] - 17:24, 18:16
**one** [19] - 4:19, 5:6, 9:16, 9:18, 10:12, 12:23, 14:4, 25:4, 26:18, 29:9, 31:24, 31:25, 34:11, 35:24, 39:13, 40:18, 41:20
**Oneil** [3] - 12:2, 15:25, 38:10
**ONEIL** [1] - 38:5
**ones** [1] - 28:20
**open** [1] - 11:3
**operate** [1] - 4:1
**opinion** [1] - 40:7
**opportunity** [3] - 9:21, 9:23, 10:1
**opposed** [2] - 30:16, 37:18
**option** [1] - 29:7
**options** [1] - 10:12
**oral** [1] - 5:9
**order** [8] - 6:4, 18:17, 22:4, 22:18, 23:2, 25:24, 32:18, 33:24
**ordered** [11] - 17:20, 17:22, 21:19, 21:22, 21:24, 25:15, 25:20, 29:21, 29:22, 29:24
**orders** [1] - 26:8
**otherwise** [1] - 30:8
**outline** [1] - 3:9
**outside** [2] - 42:17, 42:18
**oversight** [1] - 28:14

## P

**paragraphs** [1] - 3:9
**pardon** [1] - 23:24
**parent** [1] - 8:10
**parental** [1] - 35:3
**part** [1] - 41:3
**parties** [1] - 3:11
**passed** [2] - 28:20, 28:25
**past** [5] - 27:2, 31:8, 31:15, 35:13, 38:25
**patrol** [1] - 18:16
**Patrol** [5] - 16:10, 16:14, 16:17, 17:2, 20:8
**Patterson** [2] - 12:24, 13:18
**pauperis** [1] - 41:23
**pay** [2] - 40:13, 41:22
**payment** [1] - 40:20
**penalize** [1] - 10:17
**pending** [5] - 3:6, 12:1, 22:7, 22:11, 27:11, 36:17
**people** [5] - 6:24, 7:18, 8:12, 9:14,

**34:9**
  **perfectly** [2] - 13:3, 35:6
  **permission** [1] - 42:21
  **person** [5] - 3:24, 16:22, 16:24, 17:2, 18:2
  **personally** [1] - 35:1
  **pertaining** [1] - 34:9
  **ph** [5] - 12:24, 26:2, 26:10, 28:22, 33:8
  **physical** [3] - 19:24, 25:24, 26:11
  **physically** [4] - 22:9, 29:16, 38:16, 38:17
  **place** [4] - 16:24, 26:15, 27:15, 38:12
  **play** [1] - 39:13
  **played** [1] - 18:20
  **pleadings** [2] - 12:5, 29:13
  **podium** [1] - 25:3
  **point** [9] - 5:8, 13:21, 17:20, 17:22, 18:14, 27:10, 35:25, 36:11, 36:18
  **pointed** [1] - 7:6
  **points** [6] - 3:24, 26:20, 30:11, 30:13, 30:15, 31:2
  **portion** [3] - 19:15, 19:16, 43:8
  **position** [9] - 4:18, 7:5, 7:22, 7:25, 8:2, 10:4, 33:7, 36:24, 38:23
  **positions** [1] - 6:15
  **possessing** [2] - 40:22, 40:23
  **possible** [2] - 17:1, 22:19
  **post-2016** [1] - 31:25
  **practice** [3] - 21:4, 21:6, 37:19
  **pre-2016** [1] - 31:24
  **precious** [1] - 8:3
  **prefer** [1] - 9:14
  **preparation** [3] - 3:2, 7:8, 12:12
  **prepare** [2] - 5:2, 6:3
  **prepared** [1] - 3:15
  **preparing** [1] - 4:25
  **presence** [1] - 42:17
  **present** [12] - 6:3, 12:11, 14:1, 18:9, 24:25, 31:2, 31:6, 31:7, 33:24, 35:4, 37:16
  **presentence** [7] - 6:1, 12:6, 20:23, 34:7, 34:24, 35:7, 41:3
  **presume** [2] - 8:9, 10:11
  **presuming** [1] - 13:4
  **pretty** [3] - 29:11, 33:2, 35:9
  **previous** [1] - 36:13
  **previously** [1] - 32:15
  **prison** [1] - 20:13
  **Prisons** [2] - 40:15, 42:2
  **probation** [9] - 4:6, 4:8, 23:24, 24:3, 24:8, 24:14, 24:19, 33:18, 33:21
  **PROBATION** [2] - 4:9, 24:2
  **Probation** [2] - 4:10, 24:5
  **problem** [3] - 25:14, 25:18, 42:5
  **problems** [1] - 38:24
  **procedural** [3] - 11:23, 21:6, 41:10
  **procedure** [1] - 13:1
  **proceeding** [1] - 16:21
  **proceedings** [4] - 17:3, 41:2, 43:4,

**44:4**
  **process** [6] - 15:21, 16:21, 17:4, 18:19, 28:8, 34:1
  **processed** [2] - 16:10, 16:19
  **professional** [1] - 10:3
  **professionally** [1] - 9:6
  **proffer** [1] - 14:5
  **prohibited** [1] - 40:22
  **promise** [1] - 39:4
  **promote** [2] - 32:19, 40:9
  **promulgated** [1] - 28:24
  **promulgates** [1] - 29:3
  **pronounced** [3] - 41:5, 41:8, 41:16
  **pronouncement** [2] - 37:14, 40:6
  **proper** [3] - 4:3, 39:7, 41:21
  **properly** [2] - 30:24, 31:6
  **prosecution** [1] - 21:4
  **prosecutor** [1] - 14:1
  **Prospere** [2] - 4:10, 24:2, 24:5
  **protect** [1] - 40:10
  **Protection** [4] - 14:8, 15:3, 15:5, 15:16
  **PROULX** [1] - 44:9
  **prove** [1] - 8:6
  **provide** [6] - 26:5, 32:19, 35:16, 35:17, 36:20, 40:10
  **provided** [1] - 31:2
  **provides** [2] - 24:17, 25:6
  **provision** [2] - 24:18, 28:15
  **PSI** [2] - 6:10, 11:22
  **public** [2] - 8:21, 40:11
  **punished** [1] - 27:5, 38:24
  **punishment** [4] - 32:14, 32:18, 32:20, 40:10
  **purpose** [3] - 19:21, 26:4, 26:7
  **pursuant** [2] - 22:20, 34:7
  **put** [7] - 6:24, 8:1, 17:2, 17:17, 25:12, 30:15, 39:10
  **puts** [1] - 7:17

## Q

  **questions** [5] - 20:19, 20:25, 21:3, 21:10, 23:6
  **quick** [1] - 14:4
  **quite** [1] - 32:24

## R

  **Racquel** [3] - 13:16, 34:19, 35:17
  **raise** [1] - 38:2
  **raised** [2] - 38:15, 38:19
  **range** [15] - 23:23, 24:6, 24:17, 24:21, 27:17, 27:18, 28:3, 28:4, 31:18, 33:14, 33:16, 33:20, 37:13, 40:16, 41:12
  **rather** [1] - 24:23
  **re** [7] - 16:16, 16:18, 18:11, 27:12, 36:17, 39:5, 42:20
  **re-enter** [6] - 16:18, 18:11, 27:12,

36:17, 39:5, 42:20
  **re-entry** [1] - 16:16
  **read** [12] - 3:10, 3:20, 5:16, 6:7, 7:2, 7:4, 12:7, 12:12, 13:11, 13:15, 13:18, 32:4
  **reading** [4] - 3:3, 4:25, 33:5
  **reads** [1] - 32:4
  **ready** [3] - 4:14, 9:6, 9:25
  **real** [1] - 39:11
  **really** [1] - 37:18
  **reason** [7] - 5:10, 13:11, 17:7, 17:14, 34:18, 34:21, 42:21
  **reasonable** [1] - 39:17
  **reasonableness** [1] - 41:10
  **reasons** [1] - 41:12
  **rebuttal** [1] - 32:7
  **receive** [1] - 14:4, 18:25, 26:13
  **received** [9] - 5:5, 6:2, 7:6, 7:21, 12:25, 19:13, 26:20, 30:11, 30:12
  **receiving** [1] - 26:16
  **recitation** [1] - 33:2
  **recognizes** [1] - 35:14
  **recognizing** [1] - 34:8
  **recommend** [1] - 42:2
  **recommendation** [2] - 24:14, 36:8
  **recommended** [2] - 24:5, 28:3
  **record** [5] - 4:7, 13:14, 14:16, 20:7, 41:9
  **redirect** [1] - 23:7
  **reenters** [1] - 32:14
  **reentry** [5] - 12:3, 26:5, 26:19, 26:24, 32:24
  **reference** [2] - 12:1, 13:20
  **references** [2] - 13:17, 35:8
  **referred** [3] - 15:5, 21:19, 27:21
  **refers** [1] - 8:4
  **reflect** [4] - 13:15, 32:18, 33:22, 40:8
  **reflects** [1] - 24:8
  **regard** [2] - 28:14, 29:8
  **regarding** [8] - 3:23, 24:25, 32:3, 32:24, 33:6, 34:4, 36:13, 40:20
  **regards** [1] - 16:4
  **regulations** [1] - 40:20
  **relate** [1] - 23:18
  **related** [1] - 15:12
  **relating** [1] - 17:12
  **release** [11] - 17:24, 20:15, 24:19, 26:19, 33:19, 37:1, 40:18, 40:19, 40:25, 42:13, 42:18
  **remain** [1] - 37:25
  **remanded** [2] - 40:14, 41:24, 42:25
  **remedy** [1] - 30:22
  **removal** [18] - 15:21, 16:11, 16:19, 16:20, 16:25, 17:4, 17:8, 17:13, 18:1, 18:17, 19:22, 21:22, 22:4, 22:18, 23:2, 25:24, 26:11, 41:2
  **removed** [15] - 17:20, 17:22, 19:24, 20:2, 25:15, 25:21, 25:22, 26:14, 27:6, 29:16, 29:21, 29:22, 29:24, 32:15

**repair** [1] - 4:2
**repeat** [1] - 31:13
**repetitious** [1] - 21:9
**report** [12] - 4:6, 4:10, 6:1, 6:6, 12:6, 20:23, 24:8, 34:7, 34:24, 35:8, 39:16, 41:3
**reporting** [4] - 42:14, 42:16, 42:19, 42:23
**request** [4] - 21:2, 27:3, 41:23, 42:1
**requesting** [2] - 27:13, 27:19
**require** [1] - 25:19
**required** [2] - 6:3, 40:21
**respect** [7] - 30:3, 32:19, 32:21, 34:8, 36:9, 40:9, 41:5
**responded** [3] - 3:14, 12:8, 23:20
**response** [8] - 3:4, 6:11, 12:10, 26:22, 28:1, 28:10, 28:16, 28:18
**restraints** [1] - 38:1
**rests** [1] - 36:12
**result** [1] - 35:12
**review** [1] - 15:24
**reviewed** [3] - 3:11, 12:7, 12:12
**ridiculous** [2] - 8:14, 8:15
**robbery** [1] - 26:24
**room** [3] - 10:7, 11:2, 11:7
**routine** [1] - 8:19
**RPR** [1] - 44:9
**rule** [2] - 33:9, 33:24
**rules** [2] - 32:23, 40:20
**ruling** [3] - 24:11, 33:22, 34:8

## S

**safety** [1] - 28:17
**schedule** [1] - 8:24
**scheduling** [1] - 8:18
**scoreable** [1] - 30:9
**scored** [1] - 31:6
**seat** [2] - 7:1, 11:19
**seated** [2] - 14:14, 37:25
**secretary** [1] - 3:7
**Section** [4] - 12:4, 25:6, 29:14, 34:8
**SECURITY** [2] - 11:4, 13:13
**see** [6] - 6:9, 11:14, 21:10, 33:25, 39:15, 41:22
**sense** [2] - 26:9, 36:15
**sent** [1] - 22:20
**sentence** [26] - 18:25, 19:13, 19:15, 19:19, 25:12, 25:13, 25:25, 26:12, 26:13, 26:17, 27:14, 27:19, 30:12, 31:11, 32:13, 33:14, 34:13, 37:3, 37:12, 37:14, 37:17, 39:17, 40:4, 41:5, 41:7, 41:15
**sentenced** [5] - 19:2, 20:13, 20:14, 36:18, 36:25
**sentences** [2] - 30:4, 37:9
**Sentencing** [7] - 11:25, 25:11, 28:25, 29:1, 29:3, 29:5, 29:14
**sentencing** [9] - 6:4, 13:1, 28:8, 29:10,

30:24, 31:10, 32:10, 36:2, 39:16
**September** [2] - 16:7, 20:2
**serious** [3] - 6:17, 26:6, 27:5
**seriousness** [3] - 32:18, 37:10, 40:9
**serve** [3] - 19:3, 19:15, 40:18
**served** [4] - 18:19, 21:24, 31:10, 36:3
**Service** [2] - 15:15, 21:19
**service** [1] - 42:3
**serving** [1] - 19:19
**set** [1] - 40:17
**setting** [1] - 11:14
**several** [2] - 8:23, 8:24
**shall** [1] - 40:18
**shame** [1] - 39:12
**Sherika** [2] - 4:9, 24:2
**show** [1] - 7:17
**showing** [1] - 41:21
**side** [1] - 8:19
**sides** [1] - 24:23
**simply** [3] - 3:13, 9:11, 24:24
**sister** [1] - 7:16
**sitting** [1] - 39:2
**situation** [2] - 34:9, 35:2
**six** [2] - 23:1, 38:25
**skill** [1] - 4:1
**skipped** [1] - 33:3
**slash** [1] - 41:11
**someone** [3] - 3:25, 29:16, 32:25
**someplace** [1] - 11:6
**somewhat** [1] - 3:22
**somewhere** [3] - 8:8, 11:7
**son** [2] - 38:18, 39:11
**soon** [1] - 22:19
**sorry** [8] - 23:11, 38:22, 38:23, 39:17, 39:18, 42:12
**sort** [2] - 8:5, 26:25
**Southern** [2] - 8:19, 15:4
**speaking** [1] - 7:14
**special** [1] - 24:20
**specific** [1] - 26:23
**specifically** [3] - 13:6, 27:4, 30:1
**spell** [1] - 14:15
**spent** [2] - 4:24, 5:14
**Springs** [1] - 42:9
**stand** [1] - 5:21
**start** [2] - 5:5, 27:15
**started** [1] - 16:11
**state** [12] - 3:10, 4:7, 7:24, 8:8, 14:15, 17:25, 18:7, 22:12, 22:13, 22:21, 22:23, 33:3
**statement** [5] - 25:2, 36:11, 37:16, 37:22, 40:4
**States** [27] - 11:18, 14:7, 18:5, 18:9, 18:12, 19:4, 19:24, 20:3, 21:20, 22:5, 22:15, 25:5, 25:25, 26:2, 26:7, 27:6, 27:11, 27:12, 29:17, 30:14, 34:2, 37:8, 41:25, 42:14, 42:17, 42:20, 43:1
**states** [3] - 25:14, 26:3, 36:14
**status** [3] - 16:6, 19:23, 41:24

**statute** [7] - 25:19, 26:1, 26:4, 28:15, 32:3, 32:9, 32:10
**statutory** [1] - 25:7
**stayed** [1] - 35:6
**step** [6] - 10:5, 10:25, 11:1, 23:9, 23:22, 28:7
**steps** [1] - 10:9
**still** [2] - 34:5, 34:10
**stop** [1] - 16:12
**strain** [1] - 38:24
**studying** [1] - 4:25
**stuff** [1] - 6:17
**subject** [1] - 35:23
**submit** [2] - 13:23, 36:10
**submitted** [3] - 12:22, 12:23, 13:3
**subsequent** [2] - 20:15, 32:15
**substance** [2] - 34:15, 40:23
**substantiate** [1] - 6:4
**substantive** [1] - 41:10
**sufficient** [3] - 3:25, 36:20, 40:8
**suggested** [4] - 11:23, 13:2, 29:12, 33:5
**supervised** [9] - 20:15, 24:19, 26:19, 33:19, 36:25, 40:19, 40:25, 42:13, 42:18
**supervision** [2] - 26:25, 30:13
**support** [5] - 7:17, 35:2, 35:16, 35:18, 39:12
**supporter** [1] - 39:1
**suppose** [1] - 4:22
**supposed** [1] - 5:1
**surrendered** [1] - 36:4
**surrendering** [1] - 40:25
**suspected** [1] - 15:10
**sustained** [1] - 25:16
**sustaining** [1] - 29:22
**sworn** [3] - 14:6, 14:11, 38:6

## T

**talks** [1] - 29:16
**Tavarnier** [1] - 20:9
**technical** [1] - 32:3
**ten** [2] - 10:15, 27:11
**tentative** [1] - 5:3
**term** [4] - 19:3, 20:15, 42:3, 42:13
**testified** [3] - 14:11, 38:6, 39:24
**testify** [1] - 21:7
**THE** [71] - 4:12, 5:23, 6:6, 6:22, 7:23, 9:17, 10:2, 10:7, 10:15, 10:21, 10:25, 11:4, 11:5, 11:10, 11:13, 11:14, 11:19, 12:20, 12:25, 13:7, 13:9, 13:13, 13:14, 13:25, 14:6, 14:13, 14:14, 14:18, 14:21, 19:5, 19:8, 19:10, 20:20, 20:25, 21:3, 21:6, 23:6, 23:9, 23:11, 23:14, 23:17, 24:4, 27:21, 27:24, 28:1, 28:7, 28:10, 31:13, 31:16, 32:1, 32:7, 32:21, 36:9, 37:2, 37:25, 38:2, 38:8, 38:9, 38:10, 39:20, 39:23, 40:1, 40:3, 40:6,

41:14, 41:18, 42:4, 42:11, 42:15, 42:25
**therefore** [4] - 24:16, 29:25, 33:12, 40:13
**Thereupon** [4] - 14:9, 38:4, 43:4, 43:8
**three** [6] - 5:14, 8:25, 20:18, 30:11, 38:19, 39:1
**timing** [1] - 33:4
**Title** [8] - 25:5, 28:5, 28:17, 28:18, 34:1, 34:4, 36:9, 37:2
**today** [11] - 5:20, 6:10, 10:1, 10:13, 10:23, 12:11, 12:15, 12:16, 12:18, 34:19
**tomorrow** [1] - 9:15
**total** [1] - 30:15
**trafficking** [5] - 17:9, 17:13, 20:14, 27:10, 36:16
**transcribed** [1] - 43:4
**transcription** [1] - 44:4
**traveled** [2] - 8:12, 9:14
**triggers** [1] - 25:25
**true** [1] - 39:6
**truly** [1] - 38:23
**trumps** [1] - 32:11
**try** [2] - 9:1, 38:13
**trying** [4] - 16:13, 16:18, 18:11, 39:5
**turn** [2] - 24:14, 33:18
**turnaround** [1] - 16:25
**two** [19] - 3:2, 4:24, 5:15, 6:17, 8:16, 8:25, 12:22, 13:19, 21:1, 21:10, 25:7, 26:20, 30:12, 31:22, 31:24, 35:16, 35:17, 37:8
**type** [2] - 25:16, 35:23
**types** [1] - 37:9

## U

**U.S** [7] - 4:5, 4:10, 8:20, 11:24, 24:3, 38:19, 39:5
**ultimately** [1] - 19:24
**unable** [1] - 40:13
**under** [4] - 12:4, 25:5, 26:1, 34:10
**underrepresentation** [1] - 30:5
**United** [27] - 11:18, 14:7, 18:5, 18:9, 18:11, 19:3, 19:24, 20:2, 21:20, 22:5, 22:14, 25:5, 25:25, 26:2, 26:7, 27:5, 27:11, 27:12, 29:17, 30:14, 34:1, 37:8, 41:25, 42:14, 42:17, 42:20, 42:25
**unless** [1] - 32:5
**up** [8] - 3:7, 5:7, 5:21, 11:14, 12:15, 24:19, 28:19, 34:3
**upbringing** [1] - 34:25
**upper** [1] - 27:3
**upward** [9] - 12:8, 23:19, 24:11, 24:22, 25:1, 28:2, 28:11, 32:22, 33:13
**USA** [1] - 11:1
**USC** [3] - 12:4, 32:9, 34:7

## V

**valve** [1] - 28:17
**variance** [7] - 12:8, 21:2, 25:1, 27:3, 28:11, 32:22, 41:11
**various** [2] - 25:13, 33:4
**vary** [1] - 33:13
**version** [7] - 29:10, 29:15, 29:16, 29:17, 31:2, 31:6
**versions** [2] - 31:23, 31:24
**versus** [3] - 11:1, 26:2, 29:17
**victims** [1] - 14:1
**view** [1] - 3:16
**viewpoint** [1] - 3:20
**violation** [1] - 17:23
**violations** [1] - 15:10

## W

**wait** [4] - 5:10, 5:19, 5:20
**waited** [1] - 7:24
**waiting** [1] - 10:18
**warrant** [7] - 18:18, 22:11, 22:12, 22:13, 22:17, 22:21, 34:13
**warranted** [1] - 32:14
**warrants** [1] - 22:8
**waste** [1] - 5:2
**Wayne** [1] - 16:1
**week** [2] - 9:12, 10:15
**weighing** [1] - 37:9
**weight** [1] - 26:8
**whole** [1] - 34:21
**wife** [4] - 12:23, 34:19, 38:25
**wife's** [1] - 13:17
**willy** [1] - 3:17
**Wisconsin** [1] - 7:15
**wisdom** [1] - 13:1
**wish** [7] - 13:23, 14:2, 24:25, 36:10, 37:22, 39:21, 39:24
**wishes** [2] - 37:17, 41:19
**witness** [4] - 14:4, 14:6, 21:4, 23:11
**WITNESS** [1] - 14:13
**witnesses** [12] - 4:15, 4:16, 6:24, 8:13, 8:16, 8:19, 8:23, 9:11, 14:1, 21:7, 23:12, 23:15
**works** [1] - 35:8
**worth** [1] - 36:6
**written** [3] - 5:2, 6:6, 28:15
**wrote** [2] - 3:6, 34:23

## Y

**year** [4] - 29:9, 30:2, 36:22, 40:18
**years** [12] - 15:14, 19:2, 20:18, 24:18, 24:19, 25:7, 27:12, 28:23, 30:18, 34:15, 38:25
**years'** [2] - 20:13, 36:19

**yesterday** [5] - 4:24, 5:15, 6:19, 7:8, 13:7

## Z

**Zeliah** [4] - 26:2, 26:10, 28:22, 33:8